Emmett E. PAGE, Appellant,

v.

ST. LOUIS SOUTHWESTERN RAIL-
WAY COMPANY, Appellee.

No. 21427.

United States Court of Appeals
Fifth Circuit.

Aug. 10, 1965.

Rehearing Denied Sept. 22, 1965.

Russell M. Baker, Dallas, Tex., for appellant.

Galloway Calhoun, Jr., Jack W. Flock, Tyler, Tex., Clyde W. Fiddes, Ramey, Brelsford, Hull & Flock, Calhoun & Clark, Tyler, Tex., of counsel, for appellee.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Here again for the second time after a second trial, this case is not yet over. Unfortunately, we must reverse and remand for still a third trial. We must do so not because the District Judge failed to follow our pronouncements, but rather because he did. Once again it is an appeal by the Employee from an adverse judgment entered on a general verdict in an FELA case. The immediate problem is the collateral source rule and whether evidence of the receipt of a railroad pension is admissible as bearing on the likelihood that the elderly Employee would have retired even though no injury had occurred. Also raised are questions of jury instructions, including specifically whether there is a double standard of proximate causation, one as to the Employee's affirmative case and another as to the Railroad's defense of contributory negligence.

The facts of the occurrence are adequately set forth in our prior opinion. Page v. St. Louis Southwestern Ry., 5 Cir., 1963, 312 F.2d 84, 98 A.L.R.2d 639. There was no significant change either in the theories of liability and defense or the factual evidence presented. We there reversed the judgment entered on a general verdict for the Railroad because of error in the jury instruction on proximate cause.

## COLLATERAL SOURCE EVIDENCE

But we affirmed the exercise of the trial Judge's discretion in admitting evidence over the Employee's objection that from about "October 7, 1959, one year after the accident," the Employee "had been drawing the sum of $160.00 per month as a pension under the Railroad Retirement Act." 312 F.2d at 94. Based largely on our prior cases of A. H. Bull Steamship Co. v. Ligon, 5 Cir., 1960, 285 F.2d 936, 937, 88 A.L.R.2d 479, and Simmons v. Union Terminal Co., 5 Cir., 1961, 290 F.2d 453, 455, we had this to say.

"In the present case, the evidence was logically relevant, it was admitted on cross-examination of the plaintiff after he had testified that he was not working because of disability resulting from the accident. The defendant claimed that the plaintiff was malingering. Under the circumstances of the present case, the district court did not abuse its discretion, or commit reversible error, in admitting the evidence of retirement and retirement benefits for the limited purposes clearly stated by the court." 312 F.2d at 94.

Believing perhaps that hope does spring eternal in the human breast—and certainly should in that of the relentless advocate—counsel for the Employee undaunted by this categorical, adverse declaration was persistent. Once again, by motion in limine, he objected to the introduction of this evidence. Not unnaturally, the District Judge adhered, confident in the view that what was once approved would again be favored. And so it would, but. The change came not from alteration of our views. Rather, the change came in double strength from the two intervening decisions of the Supreme Court in Tipton v. Socony Mobil Oil Co., 5 Cir., 1963, 315 F.2d 660, 1963 AMC 2276, reversed, 1963, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4; and Eichel v. New York Cent., 1963, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307.

◼ The Railroad's argument to overcome the impact of these cases runs on a double track. First, it urges, this case being the identical one formerly tried, appealed and decided, sets in train our en banc decision of Lincoln National Life Ins. Co. v. Roosth, 5 Cir., 1962, 306 F.2d 110, on the law of the case. The second is that both Eichel and Tipton are distinguishable and in any event, the Supreme Court did not intend thereby to rule out operation of the harmless error principle embodied in F.R.Civ.P. 61. As to the law of the case, Roosth took full cognizance of the principle that where the point is properly preserved for review, a different result is compelled where, subsequent to the first decision, there is an intervening change in the law by authoritative declaration of the authoritative court. Lumbermen's Mutual Cas. Co. v. Wright, 5 Cir., 1963, 322 F.2d 759, 763; Pacific American Fisheries v. Hoof, 9 Cir., 1923, 291 F. 306, cert. denied, 263 U.S. 712, 44 S.Ct. 38, 68 L.Ed. 520; Messinger v. Anderson, 1912, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152.

◼ As to the second, we think there is no substantial basis for distinguishing this case from Eichel and Tipton. One distinction suggested is the absence of any limiting instructions in the Court's charge to the jury in Tipton in contrast to the very specific restrictions given by the District Judge here on the first trial and repeated in substantially the same terms the second time. (See 312 F.2d 84, 94) Although Tipton contained no limiting instruction, the very action in Eichel necessarily rejects the idea that limiting instruction will suffice. Caughman v.

Washington Terminal Co., D.C.Cir., 1965, 345 F.2d 434.

Both Tipton and Eichel reflect a strong policy against the use of such collateral source evidence in FELA and analogous Jones Act-maritime law seamen's cases.[1] With the whole result in our case being the enigma wrapped in the mystery of a general verdict concealing forevermore the use or uses to which the jury might have put this evidence, we cannot say that the error, preserved by emphatic and timely objection, was harmless. The case must, therefore, go back for a third, and we hope last, trial.

### PROXIMATE CAUSE AND CONTRIBUTORY NEGLIGENCE

■ Of the objections to the charge, the most serious is that directed toward the charge on causation as to the Employee's contributory negligence. Following faithfully our former deliverance and the imprimatur we therefore placed on Judge Mathis' form,[2] the trial Judge structured his charge so that one instruction on causation would suffice both on attack and defense. This charge was in the Rogers theme of negligent acts playing any part, no matter how slight, in bringing about the injury.[3]

Of course, this is what the Employee wanted, but did not get on the first trial, and actually got because of our decision. So as between the injured worker and

the Railroad, he thinks this a fine and fair charge. But not so, he says, when it comes to judging causation as to asserted contributory negligence of the Employee. Here he wants the good old fashioned dialectic of proximate causation with all of its built-in metaphysical concepts of natural and unbroken sequence, but for, foreseeability of harm and the like.[4]

His reasoning is fascinating and beguiling. Whether it is more, is the question. It goes somewhat like this. As between injured worker and the railroad, the old traditional notions of proximate cause introduced a sometimes difficult, at times insurmountable, hurdle. See, e. g., Coray v. Southern Pacific Co., 1949, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208.[5] This led the Supreme Court by an evolutionary process briefly reviewed in our prior opinion to depart from this. It adopted the simple rule of physical causation as given here, note 3, supra. This is obviously more favorable to an injured worker, makes his judicial task easier, and as such effectuates the congressional policy behind FELA. But, the argument continues, there is no congressional policy to make the lot of the Railroad defendant an easier one or to remove any of the recognized difficulties to the successful assertion of the plea of contributory negligence. On the contrary, outlawing contributory negligence as a bar[6] and substituting in its place

---

1. See Judge Browning's extensive opinion for the 9th Circuit in Gypsum Carrier, Inc. v. Handelsman, 9 Cir., 1962, 307 F. 2d 525, 534–535; see also The Collateral Source Rule in the American Law of Damages, 46 Minn.L.Rev. 664 (1962).

2. See note 5, 312 F.2d 84, 91, quoting from Judge Mathis' jury instructions, 28 F.R.D. 497.

3. The Judge charged: "As the term 'proximate cause' as used in this charge, I instruct you that an injury is proximately caused by an act or omission when it appears the act or omission played any part, no matter how small, in actually bringing about or causing the injury."

4. The Employee's objection to the charge (note 3, supra) spelled out what he thought the charge should have been,

"Proximate cause * * * is that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, ought to be anticipated by a person of ordinary prudence in the light of the attending circumstances."

5. Discussed at length by us as the first point of departure, 312 F.2d 84, 88.

6. "In all actions * * * against any such * * * railroad under * * * this chapter to recover damages for personal injuries to an employee * * *, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *." 45 U.S.C.A. § 53.

the statutory doctrine of "comparative negligence"[7] Congress must have meant to retain, not diminish, existing problems of defense on this score. The argument now reaches its climax. Since traditional proximate cause was considered to be more onerous as a standard for affirmative recovery, it is bound to be more onerous as to a railroad attempting to sustain its burden of proving employee contributory negligence. Furthermore, since no possible whisper of a trace of a congressional desire to make defense easier can be found, causation as to contributory negligence should be stated in the rigmarole of proximate cause.

Attesting again to the marvels of an advocative system which, grinding out the thousands of FELA cases in State and Federal appellate courts, nevertheless after a half century's experience under the Act still leaves new questions, this problem is very, very fresh, the materials of decision are scarce, and the score now stands 1 to 1. Texas upholds the Employee's contention,[8] the Sixth Circuit, that asserted here by the Railroad.[9]

Many good legalistic arguments can be marshaled for either view, none however demonstrating with any assurance that at this late date we can, to paraphrase Judge Friendly,[10] discern what Congress in 1908 thought about a matter on which it never thought. But even though we cannot cast it in terms of congressional purpose as a proposition of original intent, we still have the task of construing the Act and fashioning a rule to be followed. In this approach, we think the better rule is one of a single standard.

As to both attack or defense, there are two common elements, (1) negligence, i. e., the standard of care, and (2) causation, i. e., the relation of the negligence to the injury. So far as negligence is concerned, that standard is the same—ordinary prudence—for both Employee and Railroad alike. Unless a contrary result is imperative, it is, at best, unfortunate if two standards of causation are used. We think there are several reasons why substantively there is no such imperative.

At the outset, there is the doubt that such casuistries have any practical significance as the jury, undergoing its once-in-a-lifetime exposure to the equivalent of a law school lecture, seeks to translate instruction into definitive answers, either general verdict or special interrogatories. It was on this approach that we thought we could reconcile what appeared on the surface to be conflicting decisions of the Second and Ninth Circuits.[11] The Ninth Circuit's view seems to be that Rogers is a test, not of causation for the fact-finder, but of what makes a case requiring jury submission. See 312 F.2d 84, 91.

The Employee urges that a single standard would defeat another congressional purpose. In addition to the recognized aim of shifting the economic burden of railroad casualties from the in-

7. Prosser thinks it more accurate to say "comparative damages". Prosser, Torts § 53 n. 37.

8. Missouri-Kansas-Texas R. v. Shelton, Tex.Civ.App., writ ref'd n. r. e., 1964, 383 S.W.2d 842.

9. Ganotis v. New York Cent. R., 6 Cir., 1965, 342 F.2d 767. Apparently counsel for the vanquished did not think the case "certworthy", Tipton (Harlan, J., dissenting), 375 U.S. 34, 84 S.Ct. 1, 11 L. Ed.2d 4, 7. At least it was not sought.

10. "Our principal task, in this diversity of citizenship case, is to determine what the New York courts would think the California courts would think on an issue about which neither has thought." Nolan v. Transocean Air Lines, 2 Cir., 1960, 276 F.2d 280, 281, rev'd 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571, on remand 290 F.2d 904.

11. DeLima v. Trinidad Corp., 2 Cir., 1962, 302 F.2d 585, 587–588; and Bertrand v. Southern Pac. Co., 9 Cir., 1960, 282 F.2d 569, 573, discussed by us in our former opinion, 312 F.2d 84, 91.

jured worker to the negligent railroad, the Employee argues that Congress through the sanction of damages intended to elevate the operational standard of care by a railroad. Allowing it to shift more easily a considerable part of this economic loss back onto the shoulders of the injured worker would, he insists, tend to make the Railroad less diligent in its operating practices. Regardless of the doubts about this theoretical sanction, it is difficult to see how safety is enhanced if the standard of performance by the injured worker is lowered. Injuries generally come about from a failure of people. In our complex industrial society, carelessness of one may cause not only injury to self, but to others. Hence, while we doubt this figures much one way or the other as railroaders go about their daily chores or management lays out its program of maintenance and upkeep, a single standard is entirely consistent with the congressional hope of improved safety.

From a substantive point of view, we think that from the very nature of comparative negligence, the standard of causation should be single. Congress accorded valuable rights to injured employees in outlawing contributory negligence as a bar. It simultaneously subjected railroad to a more onerous burden. This was a legislative compromise to achieve recognized ends. But there is no indication that in making employee negligence a partial factor, there was ever a purpose to retain all of the common law traditional refinements of a doctrine then being rejected.

Indeed, the language of § 51 which is at the bottom of the Rogers test imposing liability for injuries or death "resulting in *whole* or in *part* from the negligence of" the railroad or its agents fits

nearly into the structure of § 53 which bans contributory negligence as a bar. Thus the purpose is to accord damages where the injuries are caused wholly from the negligence of the railroad or where caused partly by its negligence and partly by acts of others. The others would, of course, include the injured worker too. The object was to free this new legislatively created right of the common law defenses and refinements and to supply in its stead a simplified structure in which damages would be borne by railroad and injured worker in proportion to their respective faults. Use of the terms "in proportion to" and "negligence attributable to" the injured worker inescapably calls for a comparison. Since it is clear that § 53 never contemplates a reduction in damages for negligent acts of the injured worker except to the extent such negligence brings about the injuries, it is obvious that for a system of comparative fault to work, the basis of comparison has to be the same.

This, it seems to us, becomes perfectly evident when this matter is approached freed of the artificial terminology of "proximate cause." Although we there approved (312 F.2d 84, 91, note 5) the use of the instruction given (note 3, supra) and we observed also that the "case does not call for any wholesale condemnation of the use of language of proximate causation" in FELA litigation, the fact remains that on the Rogers thesis which we follow, there is really no place for "proximate cause" as such. True, there must be a causal relation either to impose damages against the Railroad or to require diminution for negligence of the injured worker. But it only adds to the problem to recast this simplified formula in the awkward, but outmoded, dialectic.[12]

12. As we have many times and recently said, see, e. g., E. L. Cheeney Co. v. Gates, 5 Cir., 1965, 346 F.2d 197 [June 10, 1965,] a general charge with special interrogatories under F.R.Civ.P. 49(a) washes out a lot of problems and might well have solved most of them here.

Using this device, the questions for jury answer simply phrased, would substantially be:
1. Was the Railroad negligent in one or more of the following respects:
(a)
(b)

## UNAVOIDABLE ACCIDENT INSTRUCTION

 Following again faithfully our admonition that "ordinarily in [an FELA] case * * * a charge on unavoidable accident is confusing and tends to distract the jury's attention from the simple issues," 312 F.2d 84, 93, the Trial Judge declined, over objection of the Railroad to submit a definitive issue on unavoidable accident. We fully approve. Experience demonstrates that in a charge properly structured, there is no need for it and hence no place for one.

But again the Employee is something less than satisfied. This time it objects to the general instruction, the effect of which was merely to state the well recognized legal principle that the happening of the accident does not itself alone give rise to an inference of negligence.

We·see no error in this instruction. Absent a res ipsa loquitur situation or one akin to it, the occurrence is not enough, and this charge merely highlighted the law's requirement that some negligence causing in some degree the resulting injuries was required.

## INSTRUCTION ON SOLE PROXIMATE CAUSE

 On the former trial, the Court charged in effect that if the jury concluded that the Railroad had "established * * * that the [Employee] was guilty of negligence," then the "burden is on the [Employee] to * * * establish * * * that such negligence * *

 (c)
 (d) ?
2. If so, did one or more or all of such acts play any part, no matter how small, in actually bringing about or causing the Employee's injuries?
3. Was the Employee negligent in one or more or all of the following respects?
 (f)
 (g)
 (h)
 (j)
4. If so, (a) did one or more or all of such acts play any part, no matter how small, in actually bringing about or

on the part of the [Employee] was not the sole proximate cause of the accident * * *." 312 F.2d 84, 92.

On the second trial, the Judge took to heart our conclusion "that if such an instruction * *˙ * was not positively erroneous, it was at the very least prejudicially misleading." 312 F.2d 84, 93. And consequently he gave precise instructions putting the burden of proof on the Railroad to establish sole proximate cause.

The Court also gave the boiler plate instruction on sole proximate cause.[13] And since it was structured as a charge for a general verdict, the instructions took the inescapably awkward form which went like this: If you (a) find the Railroad guilty of negligence which (b) "proximately caused" the injuries, you will (c) return a verdict for the Employee, and (d) specify the sum of damages unless (e) you find the Employee guilty of negligence which "proximately" contributed to "cause" his injuries in which event (f) damages will be reduced by the percentage of negligence, except that if you (g) find that negligence of the Employee was the sole proximate cause, you will (h) return a verdict for the Railroad. In taking into account the various contingencies, the charge had to repeat such things as failure to find sole proximate cause, or finding Employee negligence which was some cause but not sole cause, etc.

Although we have much doubt that a proper exception was taken, F.R.Civ.P. 51, the Employee asserts on brief that

causing the Employee's injuries? and (b) if so, to what extent, stated in terms of percentage?

13. "I instruct you that there may be more than one proximate cause of a given event or occurrence. But, as the term itself denotes, there can be only one sole proximate cause of a given event or occurrence; because, as the word 'sole' would indicate, in order for an act or omission of negligence to constitute a sole proximate cause of a given event or occurrence, it must be the sole and only cause of such event or occurrence."

the Court having given the Rogers physical causation rule (note 3, supra), the further instructions of the Court defining sole proximate cause produced confusion and contradiction. Thus the brief [14] points out the instruction on "sole proximate cause" necessarily incorporated the general charge on "proximate cause" (note 3, supra). Under that Rogers approach, "a cause, no matter how minute a percentage of the total causes, can be a proximate cause." This means that the Court is saying that some cause, no matter how small a fractional percentage of the total causes, can be the sole proximate cause." Going on, the brief asserts that, under the instruction given, the "jury could very easily have been misled into believing * * * that a negligent act of [the Employee] although playing only a minor part in bringing about his injuries, could also constitute the sole proximate cause of his injuries * * *."

Since our prior opinion, criticizing the placing of the burden of proof, contemplated that there might properly be a sole

proximate cause submission and we are unable to read into the Employee's exceptions to the charge an adequate objection to it on this score, we would certainly not reverse the case on this ground. But since the case is being reversed on the evidence point, we deem it a matter of good judicial administration to point out now, as we did formerly on unavoidable accident, that ordinarily in FELA cases there is really no place for this issue in the jury submission as such. All of these collateral devices so dear to the heart of Texas bred and Texas trained lawyers immersed in its complex system of special issues submission are in reality merely a submission in another form of questions already implicit in the basic ones of the (a) Railroad's negligence, (b) causation by reason of the Railroad's negligence, (c) the injured worker's negligence, (d) causation by reason of the worker's negligence, and (e) the percentage reduction of damages.[15] This effort to cross examine the jury—whether special interrogatories are used or in outlining the successive fact findings as a predicate for a gen-

14. See Employee's brief pp. 27–28.

15. Thus, using language familiar to Texas practitioners and writers, in the objection to the Court's charge both as to failure to submit unavoidable accident and placing the sole proximate cause burden on the railroad, Railroad counsel asserted "that the issue of sole proximate cause is an inferential rebuttal issue, and the burden of proof should properly be placed upon the plaintiff to establish that * * * any negligence on the part of the plaintiff was not the sole proximate cause of his injury * * *." Professor Hodges in Special Issue Submission in Texas (1959), regarded as one of the best guides through this labyrinth, discusses this in Chapter III "Inferential-Rebuttal Issues." He explains the rule at least for Texas in these terms. "A party is entitled to submission of issues relating to facts which, if established, would disprove the existence of some essential elements of the opponent's cause of action or affirmative defense * * * that is, in addition to submission of issues on the factual elements of plaintiff's cause of action and defendant's grounds of defense * * *,

the charge must include issues relating to facts which would establish the non-existence of some element of either. They are * * * generally termed, inferential rebuttals, rather than direct negatives. This is because they disprove by establishing the truth of a positive factual theory which is inconsistent with the existence of some factual element of the ground of recovery or defense relied upon by the opponent, and are therefore to be distinguished from a flat denial, a mere 'no'. * * * They are evidentiary issues also in the sense that a favorable answer on such an issue—an inferential rebuttal—cannot alone support a judgment; a negative answer to the opponent's direct issue submitting an element of his ground of recovery or defense is also necessary." Hodges, 40–41. He points out that "an issue which is the direct opposite or negative of another issue presenting some element of the cause of action or defense of the opposing party need not and should not be submitted." Hodges, 41. Their use may be a trap. "Since an inferential-rebuttal issue calls for the determination of a fact which, if established, disproves the existence of a fact relied upon as an element of a

eral verdict—leads only to confusion and a proliferation of metaphysical terms scarcely understandable to the most astute scholar. Thus, our efforts (312 F.2d 84, 92) to analogize sole proximate cause burden of proof to that of contributory negligence led us, in effect, to equate so-called *contributory* negligence of less than 100% to *contributory* negligence of 100%. That which is *all* is hardly *contributory*.

Of course the substantive law recognizes that if the negligence of the Employee is the sole cause of the injury or death, there is no liability.[16] This is sometimes spoken of as the employee's contributory negligence being the sole proximate cause, but this is both an inaccurate use of the term "contributory" and seems to be wholly unnecessary since a jury, honestly determining that the injured employee's actions were the sole cause of injury, necessarily finds (either on a general charge or by special interrogatories) that no act of the railroad, even though found to be negligent, played any part in bringing about the injury. We would repeat what Judge Rives stated for us the last time. We ought to avoid those practices which "distract the jury's attention from the simple issues of whether the carrier was negligent and whether that negligence was the cause, in whole or in part, of the plaintiff's injury." 312 F.2d 84, 93. All of the issues, affirmative and defensive, by way of attack and by way of defense can be simply inquired into in a simple way (see note 12, supra). When done in this fashion, with suitable accompanying general instruction which F.R.Civ.P. 49(a) calls for, there is no need any longer for putting this in the labored terms of "proximate cause" or "sole proximate cause" or "contributory negligence."

Reversed and remanded.

ground of recovery or defense, and is only relevant when some such other fact is submitted, the possibility of conflict in the answers of the jury is always presented." Hodges, 48. And, "if the answers to the inferential-rebuttal issue and issue which it rebuts are in conflict, judgment cannot properly be entered on either, since conflicting answers are mutually destructive." Hodges, 49. Application of the practice makes it necessary for the Court siring the whole business to put additional limitations or overtones on familiar concepts, much as was done here under the guise of defining "proximate cause" (see note 3, supra). See, e.g., Dallas R. & Terminal Co. v. Bailey, 1952, 151 Tex. 359, 250 S.W.2d 379, in which the Court undertook to prescribe the uses to which "unavoidable accident" or "new and independent cause" or "sole proximate cause" may be put. Hodges, 51. Even Texas might dispose of their use here. For "a sole proximate-cause issue may not be employed to inquire whether the conduct of the plaintiff was the sole proximate cause" and its use should be limited to ascertain whether "the conduct of some third person was the exclusive cause of the event." Hodges, 58.

It is not clear, however, whether this reasoning is acceptable where, as under FELA, comparative negligence applies.

16. See, e.g., New York Cent. R. v. Marcone, 1930, 281 U.S. 345, 50 S.Ct. 294, 74 L.Ed. 892; Chesapeake & Ohio R. v. Thomas, 4 Cir., 1952, 198 F.2d 783, cert. denied, 344 U.S. 921, 73 S.Ct. 387, 97 L.Ed. 709; Thompson v. Atlantic Coastline R., 1956, 94 Ga.App. 683, 96 S.E. 2d 206, reversed on other grounds, 213 Ga. 70, 97 S.E.2d 135, opinion conformed 95 Ga.App. 475, 98 S.E.2d 102; but cf. Dennis v. Denver & Rio Grande Western R., 1963, 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256: "Once it is shown that 'employer negligence played any part, even the slightest, in producing the injury,' Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493, 499, a jury verdict for the employee may not be upset on the basis of his own negligence, no matter how substantial it may have been, although the jury may, of course, take petitioner's contributory negligence into account, as it did here, in arriving at the final verdict." 375 U.S. 208, 210, 84 S.Ct. 291, 293, 11 L.Ed.2d 256, 258.