**William K. HEATH, Plaintiff,**

v.

**MATSON NAVIGATION COMPANY,
Defendant.**

**Civ. No. 70–3134.**

United States District Court,
D. Hawaii.

Sept. 24, 1971.

Paul F. Cronin, Gerald Y. Sekiya, Bortz, Case, Stack, Kay, Cronin & Clause, Honolulu, Hawaii, for plaintiff.

C. F. Damon, Jr., Damon, Shigekane, & Char, Honolulu, Hawaii, for defendant.

MEMORANDUM DECISION

PENCE, Chief Judge.

On Thanksgiving night, November 27, 1969, at approximately nine p.m. and while at sea, plaintiff William K. Heath, an able-bodied seaman aboard the S. S. Hawaiian Merchant, while walking up the port, forward side of the ship to as-

sume his duties as bow lookout, fell over a fire hose which had been left out on the main weather deck. As a result of his fall Heath sustained a back injury.

On the morning of that same day, the fire hose had been used to discharge some molasses overboard. The operation was completed around noon but the fire hose was left on deck. Then, some nine hours later, Heath tripped over the hose and fell to the deck.

Plaintiff sues in admiralty under the Jones Act, 46 U.S.C.A. § 688 (1958), alleging negligence of Matson Navigation Company, owner of the Hawaiian Merchant, in failing properly to use and stow the fire hose.[1] Plaintiff further alleges unseaworthiness under General Maritime Law.

Matson admits liability in this case, but adds the following caveat:

"In so admitting liability, defendant does not waive [its third] defense * * * that any injuries or damages suffered by Plaintiff were caused in whole or in part or were contributed to by Plaintiff."

Plaintiff now moves this court to enter a partial summary judgment holding Matson's Third Defense inapplicable to this case. Plaintiff argues that Matson's use of the fire hose over which Heath fell violated certain Coast Guard regulations as to the use and storage of fire hoses, and therefore under Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), such violations, as a matter of law, bar a defense of contributory negligence in a Jones Act case.

### 1. *Coast Guard Regulations*

Plaintiff contends that Matson's admission, together with depositions and other materials presented to the court, indicate violations of three of the United States Coast Guard Rules and Regulations for Cargo and Miscellaneous Vessels Subchapter I, 46 CFR §§ 95.10–10(g), (h) and (j), 1971, which read as follows:

" § 95.10–10(g) Each fire hydrant shall be provided with a single length of hose with nozzle attached and a spanner. A suitable hose rack or other device shall be provided for the proper stowage of the hose. If the hose is not stowed in the open or behind glass so as to be readily seen, the enclosure shall be marked in accordance with Section 97.37–15 of this subchapter."

" § 95.10–10(h) Firehose shall be connected to the outlets at all times. However, on open decks where no protection is afforded to the hose in heavy weather, or where the hose may be liable to damage from the handling of cargo, the hose may be temporarily removed from the hydrant and stowed in an accessible nearby location."

" § 95.10–10(j) Firehose shall not be used for any other purpose than fire extinguishing, drills, and testing."

Since § 95.10–10(g) lists only three permissible uses for firehose—none of which is pumping molasses—it would appear that Matson's molasses pumping operation through a firehose did violate a Coast Guard regulation.

### 2. *Kernan v. American Dredging Co.*

Assuming, *arguendo*, that plaintiff has shown violation of one or more of the Coast Guard regulations on firehose aboardship, the Supreme Court's decision in *Kernan* furnishes no support for plaintiff's argument that Matson is thereby barred from raising the defense of contributory negligence.

In *Kernan*, a seaman died on a tug operated by American Dredging Co. The tug was towing a scow at night in the Schuylkill River near Philadelphia. Flammable vapors hung just above the river's surface because of oil spilled from nearby refineries and petroleum storage and loading facilities. An open-flame kerosene lamp on the deck of the scow, hanging no more than three

---

1. See also Fed.R.Civ.P. 9(h).

feet above the water, ignited the flammable vapors, spreading flames to the tug and setting it on fire.

A navigation rule of the Coast Guard Commandant required lamps of the type involved to be carried no less than eight feet above the water. The District Court found that had the particular lamp been carried at the required minimum height it would not have set fire to the petroleum vapors.

A limitation action was brought by the tug owner and Kernan's widow filed her claim for damages. The District Court denied the claim, holding that violation of a statute does not give rise to liability unless the harm resulting from the violation was of a kind the statute had been designed to minimize. Thus, since the particular regulation was for navigational purposes only, and was not meant to protect against accidents of the type that had occurred, the widow could not recover. 141 F.Supp. 582 (E.D.Pa.), aff'd 235 F.2d 618 (3 Cir. 1956).

There was no issue of contributory negligence in *Kernan*. As the Supreme Court noted:

> "The question for our decision is whether, in the absence of any showing of negligence, the Jones Act—which in terms incorporates the provisions of the FELA—permits recovery for the death of a seaman resulting from a violation of a statutory duty. We hold that it does." 355 U.S. at 431, 78 S.Ct. at 397.

The sole issue presented to and resolved by the Court was whether liability under the Jones Act and FELA is imposed without regard to negligence where a hazardous condition resulting from a violation of a Coast Guard Regulation causes the death of a seaman. The Court analyzed a series of cases interpreting § 1 of the FELA, 45 U.S.C. §§ 51–60 (1954), *imposing such statutory*

liability where violations of the Boiler Inspection and Safety Appliances Acts were involved.[2] In *Kernan* this doctrine was extended and held applicable to a case where a seaman's death was attributable to violation of a Coast Guard regulation.

Plaintiff urges that this court extend § 3 of the FELA in a manner familiar to the Supreme Court's extension of § 1 in *Kernan*. Section 3 provides:

> *"Contributory negligence; diminution of damages*
>
> In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributes to the injury or death of such employee." 45 U.S.C.A. § 53 (1954).

The language of § 3 is clear with regard to the unavailability of a defense of contributory negligence to a defendant in an FELA suit. It is thus not surprising that plaintiff has not cited and this court has not found any case holding that the defense of contributory negligence is unavailable where violation of a non-safety statute or regulation is involved. Section 3 is not even mentioned in the majority opinion in *Kernan*. The Court does refer to § 4 [3]—which con-

---

2. 45 U.S.C.A. §§ 1–16 (1958) and 45 U.S. C.A. §§ 22–34 (1958).

3. Section 54 reads:

In any action brought against any common carrier under or by virtue of any of

the provisions of the chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in

tains similar language regarding unavailability of the defense of assumption of risk where violation of a safety statute is shown—but in no way suggests that its holding with respect to statutory negligence is intended to apply to §§ 3 and 4 of the FELA as well as to § 1. Rather, the reference to § 4 is made to rebut the argument made in the dissent that the limitations of §§ 3 and 4 ought to carry over to § 1.[4]

The Court itself noted that the sections of the FELA in issue were neither symmetrical nor overlapping in the extent of their coverage:[5]

"First, § 4 relates entirely to the defense of assumption of risk, abolishing this defense where the injury was caused by the employer's negligence or by 'violation * * * of any statute enacted for the safety of employees * * *.' It is § 1 of the FELA which creates the cause of action and *this section*, on its face, is barren of any suggestion that injuries caused by violation of *any* statute are to be treated specially." 355 U.S. at 437, 78 S.Ct. at 400. (First emphasis added.)

Plaintiff's suggestion that *Kernan* is authority for striking a defense of contributory negligence under § 3 where violation of a nonsafety statute is involved is thus without merit. Neal v. Saga Shipping Co., 407 F.2d 481 (5 Cir.), cert. denied 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969), cited by plaintiff, is thus incorrect in its statement at page 486 of 407 F.2d that *Kernan*

"* * * preclude[s] a finding of contributory negligence 'without regard to whether the injury flowing from the breach was the injury the statute sought to prevent.' 355 U.S.

at 433, 78 S.Ct. at 398, 2 L.Ed.2d at 392."

The portion of the *Kernan* decision from which the above statement was abstracted deals with statutory liability, not with contributory negligence, as a careful reading of the entire sentence out of *Kernan* makes clear:

"In FELA cases based upon violations of the Safety Appliances Acts or the Boiler Inspection Act, the Court has held that a violation of either statute creates liability under FELA if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." 355 U.S. at 432–433, 78 S.Ct. at 398.

*Neal* is further inapposite because it was not a Jones Act case. The court there held that the Jones Act was not applicable to longshoremen and that defendant's liability was to be measured in terms of unseaworthiness rather than in terms of the Safety Appliances and Jones Acts.

### 3. Causation

Even if we assume that Matson violated one or more Coast Guard regulations, and further assuming that the proviso to § 3 applies to employer violations of non-safety regulations, plaintiff still fails to show the requisite causal relation between violation of the regulations in question and the injury to Heath. The proviso to § 3 reads as follows:

"* * * That no such employee who may be injured or killed shall be held to be guilty of contributory negligence in any case where the violation by such common carrier of any statute

part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. 45 U.S.C.A. § 54 (1954).

4. This is the converse of the argument plaintiff presents in his motion.

5. The two sections do, however, embrace a single standard of causation in evaluating the respective negligence of employer and employee. See the court's discussion of causation, *infra*.

enacted for the safety of employees *contributed* to the injury or death of such employee." 45 U.S.C. § 53 (1954). (Emphasis added.)

In cases not involving violation of safety regulations it has been held that the standard of causation in establishing the negligence of the employer under § 1 and the contributory negligence of the employee under § 3 is the same. Page v. St. Louis Southwestern Railway Co., 349 F.2d 820 (5 Cir. 1965); Ganotis v. New York Central Railroad Co., 342 F. 2d 767 (6 Cir. 1965). The court in *Page* notes at page 824 of 349 F.2d:

"Indeed the language of § 51 * * * imposing liability for injuries or death 'resulting in *whole* or in *part* from the negligence of' the railroad or its agents fits neatly into the structure of § 53 which bans contributory negligence as a bar * * *. Since it is clear that § 53 never contemplates a reduction in damages for negligent acts of the injured worker except to the extent such negligence brings about the injuries, it is obvious that for a system of comparative fault to work, the basis of comparison has to be the same." (Emphasis added by court.)

If there is a single standard of causation between §§ 51 and 53 in cases where no safety act violation is alleged, it logically follows that this same standard of causation should apply where an employee seeks to establish that his employer's violation of a safety—or arguably any relevant—statute "contributed to" his injury or death and hence bars a defense of contributory negligence. In barring contributory negligence as a defense in cases involving safety—or arguably any relevant—statutes or regulations Congress has already provided a dire penalty for errant employers. It would be carrying things too far to hold that, in addition, Congress intended that a less stringent causal connection need be shown between violation of the statute and the injury allegedly resulting thereby.

The "single standard" of causation which this court applies to the present case is that of physical causation. This concept substitutes a simplified, more workable formulation of causation for "the good old fashioned dialectic of proximate causation with all of its built-in metaphysical concepts of natural and unbroken sequence, but for, foreseeability of harm and the like"[6] and provides a fair interpretation of the phrase "contributed to" in § 3 of the FELA. Under this formulation an act or omission contributes to an injury or death when it appears the act or omission played any part, no matter how small, in actually causing or bringing about the injury or death.

In the present case, it is the fact that a hose was left out on deck after dark which caused or brought about Heath's injury. That the hose was a "firehose", previously used to pump molasses does not justify the conclusion that the pumping of molasses through it in the morning, in any way caused or brought about Heath's injury in the night. Heath did not trip over the hose and receive injury in any manner attributable to the use of the firehose for pumping molasses overboard. It is the fact that the hose was left out on deck, rather than any use in violation of a regulation, which brought about Heath's injury. The hose could just as readily have been left out on deck after a drill, cleaning, or replacement. Matson's negligence would, of course, be unchanged in any of these cases, and the causal relation between such negligence and Heath's injury would likewise remain unchanged. Matson's liability would, however, unquestionably then lie in negligence rather than in violation of a Coast Guard regulation.

Finally, the nine hour period between cessation of pumping and Heath's fall further negates plaintiff's contention that the pumping of molasses through a

6. Page v. St. Louis Southwestern Ry. Co., 349 F.2d 820, 822 (5 Cir. 1965).

firehose in violation of the Coast Guard regulation, brought about or caused Heath to trip and fall. The circumstances leading to Heath's injury must be "inseparably related to one another in time and space" in order to establish that such circumstances caused the injury. Coray v. Southern Pacific Co., 335 U.S. 520, 524, 69 S.Ct. 275, 277, 93 L.Ed. 208 (1949).

Since plaintiff has failed to establish the causal connection between the alleged violation of the Coast Guard regulations regarding unauthorized use and stowage of firehoses and the injury allegedly flowing therefrom, defendant is not precluded from raising the defense of contributory negligence.

Plaintiff's motion for partial summary judgment is denied.