**72**

**John E. DOLLENS**

v.

**PUBLIC BELT RAILROAD COMMIS-SION for the CITY OF NEW ORLEANS.**

Civ. A. No. 71–486.

United States District Court, E. D. Louisiana, New Orleans Division.

Oct. 26, 1971.

John J. Cummings, III, New Orleans, La., for plaintiff.

Charles W. Lane, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant.

ORDER

R. BLAKE WEST, District Judge.

Plaintiff, John Dollens, brought this suit for damages against his employer, Public Belt Railroad Commission, under the Federal Employers' Liability Act.[1] Shortly before trial, plaintiff withdrew his request for jury trial, and this matter was tried before the Court on September 30, 1971 and October 20, 1971. For the following reasons, the Court holds that plaintiff failed to meet his burden of proving by a preponderance of the evidence that his employer was negligent, and there should therefore be judgment in favor of defendant.

The evidence at trial showed that on May 9, 1970, while in the employ of the defendant, plaintiff was a member of a railroad crew assigned to "spot" bi-level or tri-level automobile transport cars on tracks owned by Southern Service Industry, Inc. located on the levee of the Mississippi River in the vicinity of State Street in uptown New Orleans. The train, immediately prior to the accident, had proceeded in an "upriver" or "uptown" direction past the switch which would guide it onto the Southern Service spur track. In order for the train to get onto the spur track, it was necessary for the switch to be opened and thereafter it would be necessary for the train to proceed in a "backing" maneuver in a "downriver" or "downtown" direction. At the time the train was stopped immediately prior to the accident, the engine was at the "upriver" or "uptown" end of the train, the engineer being on the right or "river side" of the cab and the fireman being on the left or "city side" of the cab. Plaintiff's injury was caused when the train began moving "downriver" toward the spur track, and his right foot was caught and crushed between the "drawhead housing" and "coupler" of adjacent cars.

---

1. 45 U.S.C. Section 51 et seq.

There was a conflict of factual testimony concerning the events immediately prior to plaintiff's injury. Plaintiff testified that he gave a "watch me on the other side" or "cross over" signal to the engineer while the train was stopped. According to plaintiff's testimony, he then proceeded to attempt to cross to the other side of the train by walking over the flatbed of one of the cars. Plaintiff related that as he was crossing on the surface of the flatbed, the train moved forward, throwing him off balance and between the cars, at which time his foot was crushed.

Plaintiff's testimony was not corroborated by any other witness at the trial. Mr. Commagere, the engineer (seated on the right side in the engine) testified that he observed the plaintiff (standing on the same side of the track) give a "come ahead" signal, not a "watch me on the other side" signal. Mr. Commagere testified that upon receipt of the "come ahead" signal, he proceeded to start the train in motion. The engineer further testified that he applied the brakes as soon as he noticed plaintiff leave his range of vision.

The other members of the crew, Mr. Mauras, the switchman, and Mr. Lingoni, the fireman, were not witnesses to the signal given by the plaintiff to the engineer. Mr. Mauras stated that he heard plaintiff "hollering", noticed that plaintiff was caught between the cars, and immediately flagged the train down. The fireman, Mr. Lingoni, who was seated on the left side in the engine adjacent to Mr. Commagere, received the "flag down" signal, and quickly instructed the engineer to stop by telling him "That'll do!" All of the events in question happened very quickly, and the Court finds that the application of the brakes by the engineer, the fireman's instructions to stop, and plaintiff's disappearance from the engineer's sight occurred almost simultaneously.

All of the crewmen testified that when a train is brought to a stop, an accordion effect occurs, creating "slack" between the cars of the train. Specifically, the drawhead housing and the coupler of adjacent cars in turn come into contact and then bounce apart a certain distance. When the train resumes motion in a reverse direction, the slack is taken up, and the space between the drawhead housing and the coupler is closed. The taking up of the slack occurs by an extremely rapid series of events in which the coupling space between each of the cars is closed in swift progression from the engine to the caboose.

The Court takes into account as a fact the manner in which slack is taken up when a train assumes motion under the foregoing circumstances and draws the conclusion that plaintiff's injury could not possibly have occurred in the way that he maintained it did at the trial. Plaintiff testified that he was standing on the flatbed of a car when the train resumed motion and that he was thrown off balance and fell between the cars. The Court finds, as a matter of fact, that, if plaintiff was on the flatbed, the space between the drawhead housing and the coupler would have closed before plaintiff's foot could have reached the immediate vicinity of the coupling. The only plausible manner in which plaintiff's foot could have occupied the gap or space between the coupling was for plaintiff to have stepped directly into that space before the train resumed motion. The Court concludes that plaintiff must have attempted to cross by stepping into the coupling gap and that his foot was trapped as the slack was taken up by the forward motion of the train.

It is not necessary, however, to dwell upon indications of plaintiff's contributory negligence. The Court does not reach that question, because the plaintiff has failed to carry his burden of proving that his employer was negligent. Sano v. Pennsylvania Railroad Company, 282 F.2d 936 (3 Cir. 1960); Davis v. Illinois Central Railroad, 359 F.2d 780 (6 Cir. 1966). Plaintiff's allegations of negligence are supported only by his own testimony and are directly controverted by the testimony of the en-

gineer. The Court has observed previously that the plaintiff's testimony was implausible with respect to his location when the train assumed motion.

 The rule of law in F.E.L.A. cases is well established that the plaintiff must show by a preponderance of the evidence that his employer's negligence played a part, no matter how small, in causing his injury. Page v. St. Louis Southwestern Railway Company, 349 F. 2d 820 (5 Cir. 1965). Plaintiff has not carried that burden of proof in this case, and, accordingly, his prayer for damages and other relief is hereby denied. The Clerk of Court is hereby instructed to enter an appropriate judgment in conformity with this Order.