[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1133 
This is an appeal from a judgment for the plaintiff, a railroad employee, in an action under the Federal Employees Liability Act (FELA).
Lewis Moore, employed by Seaboard on a rail gang in North, South Carolina, brought suit against Seaboard for an alleged on-the-job back injury, which he claims occurred on August 25, 1980. Moore filed suit in the Circuit Court of Macon County, Alabama, under the FELA. The case was tried before a jury, which returned a verdict for Moore in the amount of $200,107.50.
The following represents Moore's account of his injury: On the morning of the accident Moore was instructed by Assistant Foreman Terry Williams to load two large switchplates, weighing from 150 to 200 pounds each, onto the back of a truck near the campsite. He asked Assistant Foreman Williams for help in loading the plates, but was refused. Moore testified that because a ditch separated the truck and the plates, he was unable to back the truck up to the plates. Consequently, he said, he had to drag the plates some 90 to 100 feet across the ditch to the truck and in doing so sustained the back injury.
Moore's complaint made the following allegations of negligence against Seaboard:
 "(a) Defendant failed to furnish Plaintiff with a reasonably safe place in which to perform his duties;
 "(b) Defendant failed to furnish Plaintiff with reasonably safe equipment with which to perform his duties;
 "(c) Defendant failed to furnish Plaintiff with sufficient help in the performance of his duties;
 "(d) Defendant failed to furnish Plaintiff with necessary and proper equipment for the performance of his duties;
 "(e) Defendant failed to furnish Plaintiff with the necessary and proper supervision in the performance of his duties;
 "(f) Any and all other acts of negligence which may be brought out at the trial of this matter."
Appellant, Seaboard Coast Line Railroad Co. (Seaboard), raises four issues on appeal: 1) that the evidence was insufficient to create a jury question or to support the verdict returned by the jury, 2) that the jury verdict was excessive, resulted from bias, prejudice, and passion, and deprived Seaboard of its property without due process of law, 3) that the verdict was the product of fraud, and 4) that the trial court erred by deleting the word "proximate" from its charges and by refusing to give defendant's requested charge.
 I.
The "correctness" of a ruling on a directed verdict motion in an FELA case is a question of federal law. Brady v. Southern,Ry. Co., 320 U.S. 476; 64 S.Ct. 232, 88 L.Ed. 239 (1943):
 "The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact — in this case, the jury. Western Atlantic R. Co. v. Hughes, 278 U.S. 496
[49 S.Ct. 231, 73 L.Ed. 473] (1929); Baltimore Ohio R. Co. v. Groeger, 266 U.S. 521, 524 [45 S.Ct. 169, 170, 69 L.Ed. 419]. Cf. Gunning v. Cooley, 281 U.S. 90, 94
[50 S.Ct. 231, 233, 74 L.Ed. 720]; Commissioners v. Clark [4 Otto 278, 284], 94 U.S. 278, 284
[24 L.Ed. 59]. *Page 1134 
When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims." (Citations omitted.)
Id., at 479, 480, 64 S.Ct. 234, 235. In Rogers v. MissouriPacific R. Co., 352 U.S. 500, 506-09 (1957), the Supreme Court further explained the test and the reasons for it:
 "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due `in whole or in part'
to its negligence. [Emphasis added in Rogers.]
 "The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.
 "The Congress when adopting the law was particularly concerned that the issues whether there was employer fault or whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence. Originally, judicial administration of the 1908 Act substantially limited the cases in which employees were allowed a jury determination. That was because the courts developed concepts of assumption of risk and of the coverage of the law, which defeated employee claims as a matter of law. Congress corrected this by the 1939 amendments and removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in these cases — whether employer fault played any part in the employee's mishap."
Guided by this standard, we hold that there was no error in submitting the claim to the jury. Moore testified that he asked for help in moving the heavy plates, that Williams did not provide any help at that time, and that as a result he injured his back while attempting to move the plates. While Moore's credibility was put at issue, and his version of the incident disputed by other witnesses, the only question is whether there is some evidence that Seaboard's "negligence played any part, even the slightest, in producing the injury." *Page 1135 
Furthermore, we find no error in the denial of the motion for new trial based upon a claimed insufficiency of the evidence.
 "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."
Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744,90 L.Ed. 916 (1946). As previously noted, the evidence was in conflict. Seaboard's principal argument is that photographs of the scene of the incident completely refute Moore's testimony concerning the existence of a ditch or slope through which Moore was forced to drag the plates. The photographs were taken about two years after the incident. Witnesses differed in their opinions as to whether the photographs depicted the scene as it existed at the time Moore was injured.
More importantly, Moore's case did not rest solely on the existence of the ditch or slope. Moore claimed Seaboard was negligent in failing to supply him with adequate help to lift the plates. It is undisputed that more than one person is needed to lift the heavy plates. Moore claimed that he asked his foreman, Williams, for help and that Williams refused. Jerome Beasley overheard part of the conversation between Moore and Williams and confirmed Moore's account of that conversation. Williams contends that he told Moore to have James Woodard help him load the plates. Woodard's testimony supports Williams's testimony. As there is an evidentiary basis for the jury's verdict, it is "immaterial that the [reviewing] court might draw a contrary inference or feel that another conclusion is more reasonable."
We also note that there was conflicting medical evidence as to whether in fact Moore was injured. Moore went to see several doctors. All except Dr. Kay found no reason to perform surgery. No doctor definitively said that Moore had received no injury, only that they found no medical basis to support Moore's complaints. Dr. Kay did perform surgery and removed a disc from Moore's spinal column. Moore testified that the treatment before surgery did not alleviate the pain in his back but that after surgery he felt "way better." Again, there was an evidentiary basis for the jury's determination that Moore was injured and, therefore, there was no error in denying the motion for new trial because of a claimed insufficiency of the evidence.
 II.
The basis of Seaboard's claim that the verdict was excessive, resulting from bias, prejudice, and passion, is Seaboard's contention that plaintiff's counsel attempted to reap the benefits of racial prejudice.
Under the provisions of the FELA, the suit could be brought in Macon County because Seaboard did business there. Seaboard contends it was brought there so that an all-black jury would hear the black plaintiff's case. We acknowledge that the incident which gave rise to this action took place in another state, that no witnesses reside in Macon County, and that the parties had no prior relevant contact with Macon County other than the fact that Seaboard did do business there. However, the fact that an all-black jury heard the case does not of itself show an attempt to appeal to racial prejudice. Seaboard makes a strong argument that Macon County is not the proper forum, but this Court has not seen fit to adopt the doctrine of forum non *Page 1136 
conveniens; see Central of Georgia Railway Co. v. Phillips,286 Ala. 365, 240 So.2d 118 (1970).
Seaboard contends that the cross-examination by Moore's counsel of Williams and the closing argument by Moore's counsel attempted to show racial discrimination on the part of Seaboard, in an attempt to improperly influence the jury. With regard to the cross-examination of Williams, the questions by Moore's counsel were not improper. Factual issues existed as to the circumstances under which Moore was assigned to Williams's crew and about Williams's qualifications and experience as a supervisor. The cross-examination elicited information relevant to the resolution of those issues.
Counsel can state or comment on all proper inferences from the evidence and draw conclusions based on the evidence.Calloway v. Lemley, 382 So.2d 540 (Ala. 1980). The standard of review by this Court on claims of improper argument is that we will not reverse unless substantial prejudice has resulted, and there is a presumption in favor of the trial court's rulings.Central of Georgia Railway Co., supra. After carefully reviewing the closing arguments, we find no reversible error. We note that Mr. Gray, one of Moore's attorneys, did preface several of his statements with the words "I believe." Stating an opinion or belief as to the evidence is improper. 88 C.J.S.Trials § 182 (1955). However, the trial court did admonish the jury not to weigh Mr. Gray's beliefs in resolving the case.
 III.
Seaboard contends that the verdict was the product of fraud, because Moore's counsel implied that Seaboard persuaded witness Woodard to change his testimony. There is some conflict as to whose witness Woodard was, and how he was notified to appear at the trial. It is undisputed that Woodard rode to Macon County from North Carolina with Moore and that after arriving in Macon County and speaking with Moore's counsel he was summoned by Seaboard's counsel to Montgomery and remained in Montgomery until trial. There was testimony that Woodard told one version of the incident involving Moore on the trip from North Carolina to Alabama and a different version at trial. Under these facts we find no error in Moore's argument concerning Woodard's alleged change in testimony.
 IV.
Seaboard also contends it was error to refuse to give defendant's charges one, twenty-nine, and forty. The trial court's charge included statements virtually indentical to the requested charges, except that the trial court deleted the word "proximate" from those portions of the charges dealing with causation.
The issue then is whether under the FELA the railroad's negligence must be the "cause" or the "proximate cause" of the worker's injuries. The uncertainty surrounding the proper test of causation in FELA cases is pointed out in the following annotation:
 "The common-law concept of proximate cause, as applied in tort actions generally, is a very complicated one and depends upon various tests which create difficulties in definition and application.
 "For a long time after the enactment of the Federal Employers' Liability Act and of the Jones Act, the courts, in dealing with the question of causation in cases arising under these acts, either applied the common-law concept of proximate cause or, at least, in no way indicated that the tests of causation under these acts departed from the common-law tests. However, the United States Supreme Court departed from the common-law tests in the Coray Case [Coray v. Southern Pacific Co., 335 U.S. 520, [69 S.Ct. 275, 93 L.Ed. 208] (1949)]. In a landmark case, commonly referred to as the Rogers Case [Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)] — a case not squarely dealing with the tests of causation, but *Page 1137 
primarily directed to the question under what circumstances an FELA case is submissible to the jury both as to the question of the employer's negligence and as to the question of causation — it ruled that the test of a jury case `is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' This rule has been interpreted as definitely either departing from, or eliminating in toto, the common-law concept of proximate cause. The Rogers rule, considered as a rule dealing with causation as well as negligence, has been followed by the federal courts and by state courts." [Citations omitted.]
Annot., 98 A.L.R.2d 657, at 658-59, (1964).
This Court has recognized that Rogers did not actually consider how the court should instruct the jury as to the issue of causation. Salotti v. Seaboard Coast Line Railroad Co.,293 Ala. 1, 299 So.2d 695 (1974). However, the language from Rogers
quoted in part I of this opinion is quite revealing: "The law was enacted because Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." Rogers, 352 U.S. at 507,77 S.Ct. at 448-49.
In Page v. St. Louis Southwestern Railway Co., 349 F.2d 820,824 (5th Cir. 1965), the court discussed the propriety of a proximate cause charge in FELA cases:
 "[T]he `case does not call for any wholesale condemnation of the use of language of proximate causation' in FELA litigation [; however,] the fact remains that on the Rogers thesis which we follow, there is really no place for `proximate cause' as such. True, there must be a causal relation either to impose damages against the Railroad or to require diminution for negligence of the injured worker. But it only adds to the problem to recast this simplified formula in the awkward, but outmoded, dialectic." (Citations omitted.)
In Page the court used the word "proximate cause" in its charge, but defined the term as follows: "As the term `proximate cause' is used in this charge, I instruct you that an injury is proximately caused by an act or omission when it appears the act or omission played any part, no matter how small, in actually bringing about or causing the injury." Id., at n. 3.
We find that it was not error to delete the word "proximate" from defendant's requested charges. The charges as given by the trial court accurately stated the law as to the test of causation under the FELA. We should not be understood as saying that it would have been error to insert the word "proximate" into the charge, but only that under these circumstances there was no reversible error in deleting the word from the charge.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.