ORRIN SKAUG, Plaintiff-Appellee, v. KARIN ADOLPHSON JOHNSON et al., Defendants-Appellants.

(No. 73-362; 

Second District (1st Division)—June 12, 1975.

Raphael E. Yalden and Keegan & Gosdick, both of Rockford, for appellants.

Asher, Greenfield, Gubbins & Segall, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants, as the operators of a tavern (hereinafter Tenstopet) appeal from a judgment for the plaintiff in the amount of $8,500 based on the jury's verdict in plaintiff's action under the Illinois Liquor Control Act. (Ill. Rev. Stat. 1971, ch. 43, par. 135.) Defendants contend that the verdict and judgment are not sustained by the evidence and that trial errors were committed which require a new trial.

Plaintiff testified that on August 22, 1964, he was struck with a beer bottle by another patron of Tenstopet who was intoxicated and that the attack was unprovoked. The blow opened a cut on the left side of his head which required, he said, five or six stitches at the hospital. He saw the doctor about 12 times afterwards and received audiograms and X-rays. He missed 5 or 6 days of work as the result of the incident. He stated that he had worked as a "hammer's helper" at the Rockford Drop Forge Company since 1959, that he worked about 10 feet from where the hammer was dropping and wore earplugs for protection. While admitting to trouble with his hearing prior to the attack, plaintiff claimed a further decrease in his hearing ability following the blow to his head. Plaintiff stated that he still suffered from dizziness and headaches and a loss in hearing as a result of the incident.

Dr. Arthur Maimon testified for the plaintiff. He stated that he was on the staff of St. Anthony's Hospital at the time of the incident, and

that he is board certified in pediatrics and internal medicine. He said that he saw the plaintiff on August 22, 1964, and closed an open wound on the left posterior portion of plaintiff's head with three sutures. The doctor testified that the patient complained that he had some difficulty with his hearing, and also stated that he was dizzy, particularly when lying down. He gave him a neurological examination. He noted that the man was unable to handle himself with great facility in the control of his posture, in walking and in standing. In his eye examination and hand-to-nose test he found that the results were evidence of a positive Rhomberg. Plaintiff was unsteady on his feet. The doctor had X-rays taken of the plaintiff's head which were negative for fracture. He saw plaintiff approximately 19 times between 1964 and 1970. In his last examination in March of 1970 he found no material difference between his findings in 1964 and his findings in 1970. The plaintiff complained of symptoms, including a decrease in his hearing, periodical dizziness and a feeling that he wasn't well.

The doctor concluded that the loss of hearing and the dizziness were permanent conditions. He reasoned that even if the hearing loss pre-existed, the subsequent injury with persistent symptoms over a period of 6 years signified an aggravation or continuation of the patient's symptoms. On cross-examination the doctor said that he did not test plaintiff's hearing except in a "gross" fashion with a tuning fork. He did not have an audiometer in his office because he "did not do that type of work." He did refer the plaintiff, however, to two doctors, who were eye, ear, nose and throat men, and who saw plaintiff on three or four occasions. The witness's conclusion as to plaintiff's hearing loss was based on his talking to the plaintiff and also by his review of the findings of the audiometric examinations obtained from the other doctors which he considered objective evidence.

Virginia Bradnowski testified for the plaintiff over defendants' objection that her testimony was in violation of a discovery order and inadmissible because her statement was not furnished to the defendants by plaintiff until the day of trial, although it was taken in 1970. The witness testified that she was in the tavern at the time of the incident and that the assailant was intoxicated.

Dr. Gordon Wormley, a physician and surgeon whose practice is limited to eyes, ears, nose and throat, testified for the defendants. He examined plaintiff in October of 1965 after plaintiff was sent to him at the request of defendants' attorney. He conducted an external examination which revealed nothing, a tuning fork test and an audiometer test. He testified that his "impression" was that the patient had a rather severe air-conduction type loss and a minimal to moderate bone-conduc-

tion loss. He said that to him this did not indicate nerve damage which you would expect with a head injury. He stated that he would have no way of judging the length of time the hearing loss had been present since he had seen the patient only the one time and had no previous hearing test figures to relate to. It was his "impression," however, that there would not be a sudden loss in both ears and that "it did not look like something that I would say was the result of trauma."

The defense also called Dr. John Vanlandingham, a neurologist, who examined plaintiff in January of 1966. He stated that he made his findings after testing the patient's reflexes, testing the balance for coordination, the various types of sensation, including vision and hearing, and noting his mental status. He found that plaintiff was alert and well oriented, had some impairment of hearing, moderate in both ears, but otherwise was essentially normal neurologically with no evidence of increased intercranial pressure. On cross-examination he stated that the hearing "embarrassment" was more marked in the left ear.

Dr. Miller Henderson, a Board-qualified physician in internal medecine, also testified for the defense. He examined plaintiff in 1966 at the request of the defendants' attorney. A complete neurological examination resulted in normal findings. An electroencephalograph test, however, was not normal but showed a multiple of small spikes on the right occipital lobe of the brain. The doctor stated that these were not particularly indicative "at times" of anything but they would best satisfy the picture of epilepsy. The trauma was on the opposite side of where the EEG findings were and in the doctor's opinion he felt that there was no relation between the trauma and the electroencephalographic findings. On cross-examination the doctor testified that he did not make the electroencephalographic findings himself but they were made by another doctor and were included in the witness's report.

Virgil Shoppell testified for the defendants that plaintiff had grabbed his shoulder and that "on reflex" he had picked up a beer bottle and hit the plaintiff. He admitted that at the moment of the incident he was, to a degree, intoxicated.

The principal contention of Tenstopet is that the judgment is not sustained by the evidence. Defendants challenge first the expert qualifications of Dr. Maimon to testify as to the aggravation of hearing deficiency, particularly on the basis of purely subjective symptoms. They further contend that since three qualified medical experts testified for the defense that the hearing deterioration was not the result of trauma, coupled with the fact that the medical bills amounted to only a total of $426, we must conclude that the award of $8,500 was totally unwarranted.

In effect, Tenstopet asks us to reject the opinion of plaintiff's Dr. Maimon as to the hearing loss because the doctor said he did not perform an audiometer test, because he did not "do that type of work," and to substitute the opinions of the defendants' doctors because of their greater expertise in the determination of hearing loss.

■■ We have recently considered a somewhat similar argument in *Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill.App.3d 907, 912-913. There we restated the familiar rules. The opinion of an expert is permitted on the basis of his knowledge or experience not common to the world which may be of aid to the trier of facts, and we noted that the weight and value of expert testimony, as in the case of the testimony of other witnesses, largely depends on the foundations of fact and reason upon which the opinion stands. See also *Buckler v. Sinclair Refining Co.* (1966), 68 Ill.App.2d 283, 293.

■■ The fact that Dr. Maimon, qualified as a specialist in internal medicine, did not do the type of work of another specialty does not disqualify him as an expert witness. That he tested plaintiff's hearing by the use of a tuning fork and by questioning him and did not measure the hearing loss by the use of an audiometer were not disqualifying factors but matters to be weighed by the jury in assessing his credibility. We cannot say that Dr. Maimon's opinion was without any factual basis or discard his testimony merely because we might be more impressed, were we the trier of facts, with the conflicting testimony of the defendants' experts.

Tenstopet argues that the testimony of Dr. Maimon was based on purely subjective complaints and for that reason also cannot support the verdict, citing *Frontier Ford, Inc. v. Industrial Com.* (1973), 55 Ill.2d 556, 560-561. We do not agree, however, that the testimony of Dr. Maimon was based on purely subjective symptoms. The doctor gave plaintiff a neurological examination, a Rhomberg test, took X-rays and had plaintiff tested by two specialists in hearing disorders whose reports he took into account.[1]

We do not agree, moreover, that *Frontier Ford* stands for the proposition that an award based only on subjective symptoms in a suit involving proof of personal injury cannot stand. In that case the basis for the

---

[1] While defendants argue that this was hearsay and that the reports referred to were not in evidence, the record shows no objection to Dr. Maimon's testimony on the basis of hearsay or, in fact, any objection to Dr. Maimon's testimony on the basis of competency. Moreover, it is doubtful that a hearsay objection could have been sustained under authorities permitting medical witnesses to base their diagnosis and conclusions in part on sources other than themselves. See *Borowicz v. Seuring Transit Co.* (1968), 98 Ill.App.2d 326; *Mehochko v. Gold Seal Co.* (1966), 66 Ill.App.2d 54; *Hickey v. Chicago Transit Authority* (1964), 52 Ill.App.2d 132; *Smith v. Broscheid* (1964), 46 Ill.App.2d 117.

exclusion was a provision of the Workmen's Compensation Act requiring proof of "objective conditions or symptoms" of accidental injury in the course of employment. (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(b)7.) We find no similar restrictions in the Illinois Liquor Control Act under which this dram shop suit was brought. Dr. Maimon as plaintiff's treating physician could, of course, include subjective symptoms related by the patient in the basis for his medical opinion. *Bowman v. Illinois Central R. R. Co.* (1957), 11 Ill.2d 186, 214.

■■ Nor can we agree with defendants that the size of the verdict shows that it is a result of passion or prejudice in the light of the small amount of special damages proved by the plaintiff. The testimony of Dr. Maimon was that the headaches, dizziness and aggravation of hearing loss were permanent injuries, based on their long continuance. The plaintiff testified that he was still suffering these complaints. The recovery under these circumstances was within the discretionary area of jury verdicts. See *Lau v. West Towns Bus Co.* (1959), 16 Ill.2d 442, 452-453.

We conclude that the verdict and the judgment were based on sufficient evidence and were not contrary to the manifest weight of the evidence.

■■■ The further contention of Tenstopet that the trial judge erred in permitting Virginia Bradnowski to testify for the plaintiff over objection, requires only a brief discussion. Even if we assume that the name of the prospective witness was, under the particular court order, a subject of the duty of continuing disclosure and that the order was violated Tenstopet can show no prejudicial error. The testimony of this witness relating to the assailant's intoxication was not substantially different than the testimony of the assailant Shoppel offered in defendant's case. Virginia Bradnowski testified that "Oh, he was a little intoxicated." Shoppel testified that he had purchased liquor at Tenstopet, that he "had drank," and was intoxicated "to a degree." In any event, we conclude from our examination of the record that the trial judge did not exceed the proper limits of his judicial discretion in finding that there was no duty of continuing disclosure under Supreme Court Rules 213(a) and 214 (Ill. Rev. Stat. 1971, ch. 110A, pars. 213(a), 214) and in permitting the witness to testify. See *Brzezinski v. Gajda* (1972), 5 Ill.App.3d 977, 979-980. See also *Buckler v. Sinclair Refining Co.* (1966), 68 Ill.App.2d 283, 290-291.

We affirm the judgment.

Affirmed.

GUILD and HALLETT, JJ., concur.