RUTH McKINNEY BRUMLEY, Ex'r of the Estate of Gordon Brumley, Deceased, Plaintiff-Appellee, *v.* FEDERAL BARGE LINES, INC., Defendant-Appellant.

Fifth District    No. 78-516

Opinion filed November 14, 1979.

Raymond L. Massey, of Thompson & Mitchell, of East St. Louis, for appellant.

Jerome J. Schlichter and David J. Letvin, both of Cohn, Carr, Korein, Kunin, Schlichter and Brennan, of East St. Louis, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Gordon Brumley, brought this action in the Circuit Court of St. Clair County under the Jones Act (46 U.S.C. §688 *et seq.* (1970)) to recover damages for personal injuries allegedly caused by the negligence of defendant, Federal Barge Lines, Inc. The jury returned a verdict of $84,000 in favor of plaintiff upon which judgment was entered. Defendant now appeals from the denial of his post-trial motion for judgment *n.o.v.*, a new trial or a substantial remittitur. Brumley died following the filing of notice of appeal and his widow has been substituted as plaintiff-appellee.

The facts established that on January 9, 1973, Brumley, a towboat captain employed by defendant, reported to work at the Gasconade Street landing on the Mississippi River in St. Louis, Missouri. There he was to board the m/v United States, a vessel belonging to defendant. To reach the vessel, Brumley had to walk along a narrow and icy dirt ledge on the river bank to a landing barge, alongside which the m/v Missouri was docked. The Missouri would then take Brumley to the m/v United States operating downstream.

While Brumley was walking across the narrow and icy ledge, he found it necessary to walk sideways and hold on to weeds growing along the path for support. Before he reached the landing, he slipped and fell backwards against the barge as the ledge collapsed and broke away from under his feet. Despite experiencing pain in his back, Brumley boarded the m/v United States and took over as its pilot.

Brumley, 63 years old at the time of trial, did not miss any work from the date of the injury until trial as a result of his fall; however, he testified

that he still had severe leg and back pain. Dr. James Bradley, Brumley's son-in-law and treating physician, testified by deposition that plaintiff's fall on January 9, 1973, caused injury to the lower back which aggravated a pre-existing condition of osteoarthritis.

On appeal, defendant first contends that the trial court erred in allowing a 72-year-old river pilot, Arthur Zimmer, to testify as an "expert witness," so characterized by the parties, as to the availability of employment for riverboat pilots who were more than 65 years old. Defendant maintains that it was surprised and prejudiced by such testimony because plaintiff had not given defendant prior notification of his intention to call the witness and because the testimony related to Brumley's loss of future earnings, which defendant claimed it reasonably and in good faith believed would not be an element of plaintiff's damages. Thus, a major controversy in this case concerns the propriety of plaintiff raising the issue of lost earning capacity for the first time at trial.

The facts established that prior to trial, plaintiff made an oral motion *in limine* to prohibit defendant from revealing Brumley's income, or medical expenses incurred as a result of the injury as he was not seeking damages for *lost wages* or *medical costs*. In a discussion following the motion, counsel for plaintiff stated in the presence of the court and defense counsel that he was seeking damages for the "nature, extent and duration of the injury, aggravation of the pre-existing condition, pain and suffering and disability" for being unable to engage in non-employment related activities. Plaintiff's counsel did not state at this time that he was not asking for damages related to lost earning capacity.

At trial, Brumley testified that he intended to work as long as he was able. He added that there would continue to be employment for a man of his age and experience and that he planned to work beyond the age of 65.

Dr. Eli Shuter, a neurologist, testified on behalf of plaintiff. His testimony reveals that he first saw Brumley on June 6, 1977, at which time he took an extensive medical history and conducted a thorough examination of Brumley's back and lower extremities, including neurological tests. On the basis of his examination and x-rays taken in 1973, 1975 and 1977, the doctor diagnosed Brumley as suffering from "aggravation of severe degenerative arthritis of the lumbrosacral spine" and "severe lumbrosacral strain." A subsequent visit on May 2, 1977, shortly before trial, which visit included an updated medical history, another examination of the lower back and extremities and an electromyogram, let Dr. Shuter to make an additional diagnosis that Brumley also suffered from reticulitis, the squeezing or compression of the nerve roots. Following a lengthy hypothetical question incorporating Brumley's testimony, the testimony of Dr. Bradley, who had testified as to his

examination and treatment of Brumley, and Dr. Shuter's findings, Dr. Shuter concluded that Brumley's lower back injuries were caused by the fall. He added that the injury was permanent; that no cure was available; and that the pain would increase because arthritis is a progressive disease. Over objection, he thereafter concluded that in his opinion Brumley would be able to continue working as a riverboat captain for only a period of six to 18 months before the injury would become too painful.

Arthur Zimmer, the 72-year-old river pilot, was the next witness called by plaintiff. Defendant objected to the pilot testifying and moved to exclude the testimony, or, in the alternative, for a continuance on the basis of surprise. Counsel for plaintiff responded that the present version of subsection (3) of section 58 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 58(3)), requiring the disclosure of expert witnesses upon motion, was not applicable at the time of trial; that he had no duty to furnish defendant with the so-called expert's identity; and that he had no intention of calling the witness until the night before because he did not believe until then that plaintiff would have a claim for future lost earnings. We note that prior to trial defendant had asked plaintiff by written interrogatory to identify all expert witnesses who had been consulted by plaintiff with respect to this case. Plaintiff, in answering the interrogatory, had not furnished the name of Arthur Zimmer.

Counsel admitted that he originally had no plans to claim loss of future earnings but indicated that he had changed his opinion upon hearing Dr. Shuter's testimony and receiving the medical report of a Dr. Gold, a physician who had examined Brumley on behalf of defendant approximately a week and a half to two weeks before trial. The report, which had not been furnished to plaintiff until after the first day of trial, indicated that Brumley was suffering from "lumbar osteoarthritis with radiculopathy" and further indicated that if the pain in the lower extremities became intolerable, the doctor would consider "lumbar myelography." It is plaintiff's counsel's contention that the findings of the report, belatedly given to plaintiff, contributed to his decision during trial to seek damages for loss of future earnings as this report diagnosed a possible ruptured disc and, therefore, to call Captain Zimmer as a witness.

The court offered defendant a day and a half recess for the purpose of questioning Zimmer and securing witnesses to rebut his testimony. In addition, it offered defendant the opportunity to recall Brumley for further cross-examination and suggested that defendant call Brumley as a witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) Defense counsel, however, claimed that the prejudice to defendant could not be cured and requested a mistrial. The

court responded by permitting Zimmer to testify. We note, however, that prior to hearing Zimmer's testimony, defense counsel talked at length with the witness during a noon recess.

Captain Zimmer, 72 years old at the time of trial, testified that he has had his river pilot's license since 1944 and his master's license since 1948. He indicated that he still works on the river and further indicated that so long as a pilot or master is qualified he can find all the work he wants, even though he may be over 70 years old. The plaintiff testified to the same effect.

At the conclusion of plaintiff's case, defendant stated that it would present no evidence of witnesses on its behalf. Thereafter, the jury returned a verdict in favor of plaintiff.

Initially, we note that the law is clear that plaintiff was not required to furnish Captain Zimmer's name prior to trial. Subsection (3) of section 58 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 58), which now requires disclosure of the identity of expert witnesses upon motion of the opposing party, was inapplicable at this trial. Furthermore, plaintiff's list of experts, prepared in response to defendant's supplemental inter-rogatories, was complete and accurate at the time it was furnished to defendant. Plaintiff, therefore, did not violate any discovery rule or order and defendant does not argue to the contrary.

Defendant, nevertheless, claims it was surprised by plaintiff calling Zimmer as an expert witness and introducing evidence of loss of future earnings. Whatever surprise, if any, was suffered by defendant, we believe, did not result in prejudice to its case. Defendant can hardly claim surprise when proper preparation for trial would lead defendant to anticipate or be arguably on notice of the potential issues of loss of earning capacity and future wages. (See *Burns v. West Chemical Products, Inc.* (1973), 12 Ill. App. 3d 947, 299 N.E.2d 455.) Defendant must have been aware of the possibility of these issues being raised at trial, especially where the report of defendant's own physician, revealing the extent of the injury to Brumley, was not furnished to plaintiff until after the first full day of trial. Defendant, therefore, by delaying the disclosure of the report, can be said to have contributed in part to the alleged surprise.

■■■ Whether a witness, previously unknown to the adverse party or not employed until after trial commences, should be allowed to testify is within the discretion of the trial court. (*Simpson v. Johnson* (1977), 45 Ill. App. 3d 789, 360 N.E.2d 144; *Burns v. West Chemical Products, Inc.*) Such discretion was clearly not abused in the present case. Witnesses are occasionally found during trial and may be permitted to testify if the opposition is given the opportunity to depose or question the witness. (*Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 378

N.E.2d 1176.) Defendant, upon being confronted with an unknown witness, was offered such an opportunity by the trial court but chose not to investigate the matter further except for interviewing the witness during a recess. Defendant can have little cause to complain of any prejudice when it refused all reasonable offers to cure the alleged error and when it did in fact speak with the witness prior to his testifying. See *Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 345 N.E.2d 814; *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971, 331 N.E.2d 243.

In addition, we note that Captain Zimmer merely testified that a well-qualified river pilot could continue to find work beyond his 65th birthday. Defendant now makes repeated attempts to capitalize on this testimony to preserve error, alleging that it caused irreparable prejudice to the defense. Such testimony can hardly be categorized as prejudicial error where it apparently added little to plaintiff's case and was to a significant extent duplicative of Brumley's testimony. See *Skaug v. Johnson* (1975), 29 Ill. App. 3d 238, 330 N.E.2d 265.

Defendant next contends that the trial court erred in permitting Dr. Shuter to testify as to Brumley's physical condition and future ability to work as a towboat pilot. Defendant maintains that it was error for Shuter, an examining and not a treating physician, to offer an opinion of Brumley's condition at trial based on the subjective complaints of the pilot made during the two examinations. In addition, it argues that there was no foundation evidence presented to support the doctor's opinion of Brumley's ability to continue working as no evidence was introduced of Shuter's familiarity with the duties of a river pilot.

■■■ Defendant is correct in noting that an examining physician, that is, one who examines a patient for purposes of testifying at trial, may not state his opinion as to the cause of an injury based upon subjective complaints elicited from that patient. (*Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 182 N.E.2d 211; *Rogers v. Chicago & North Western Transportation Co.* (1978), 59 Ill. App. 3d 911, 375 N.E.2d 952.) At the same time, however, "the mere fact that an examining physician obtains a history from the patient does not disqualify his expert testimony based on objective findings or upon a hypothetical question." (*Crane Co. v. Industrial Com.* (1965), 32 Ill. 2d 348, 353, 205 N.E.2d 425, 428; see also *Shockley v. Industrial Com.* (1979), 75 Ill. 2d 189, 387 N.E.2d 674.) Assuming for the moment that defendant's categorization of Shuter as an examining physician is correct, we believe that this expert's testimony concerning the nature of the injury was admissible. Dr. Shuter conducted a thorough physical examination of Brumley's back and lower extremities, including the use of neurological tests; had the opportunity to observe and compare X rays taken during different time intervals; and gave Brumley an electromyogram. Although it would have been permissible

for Shuter to testify as to his diagnosis and opinion of the cause of the injury based on these objective findings, the use of the hypothetical question, incorporating these findings and the other evidence at trial, was, in addition, a proper means of presenting this expert testimony. We reject defendant's contention that the subjective complaints of plaintiff related to Shuter served as a basis for Shuter's opinion of the cause of the injury.

Moreover, there is evidence in the record that would suggest that Dr. Shuter might be a treating and not just an examining physician and could therefore testify as to both objective and subjective symptoms of the injured party on the theory that the patient's desire for proper treatment outweighed any motive to falsify any answers to the doctor's questions. (*Jensen v. Elgin, Joliet & Eastern Ry. Co.*) Such evidence consisted of Dr. Shuter discussing the use of additional medication, recommending greater use of a lumbosacral corset, and urging Brumley to rest on a firm mattress and restrict certain activities.

We also believe that defendant presents no arguments on appeal that would warrant excluding Shuter's testimony as to Brumley's future ability to work as a riverboat captain. Defense counsel objected to such testimony on the grounds that the question was "conjectural" and that the answer would be "speculative." Defendant claimed in his post-trial motion and now asserts on appeal that the testimony was improper because there was no foundation evidence of Shuter's familiarity with the duties of a river pilot.

An objection to a question because it calls for a speculative answer is not synonymous, as claimed by defendant, to an objection based upon lack of proper foundation. And it has long been held that a specific objection to evidence constitutes a waiver of all other points not specified or relied on. (*Town of Cicero v. Industrial Commission* (1949), 404 Ill. 487, 89 N.E.2d 354; *Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 382 N.E.2d 587.) Furthermore, the fact that defendant first raised the issue of foundation evidence in his post-trial motion and now on appeal does not preserve the alleged error. An objection to the introduction of evidence must be made at the time of its admission or it will be considered waived. *Jacobs v. Holley* (1972), 3 Ill. App. 3d 762, 279 N.E.2d 186.

Defendant also argues that the trial court erred in granting plaintiff's motion *in limine* for a protective order precluding defendant from inquiry into or referring to the pension, retirement and social security benefits plaintiff was to receive upon retirement. Defendant contends that the introduction of these benefits would be relevant to the issue of future earning capacity as they would reflect upon Brumley's motivation to continue working beyond the age of 65. Plaintiff responds that the so-

called "collateral source doctrine" would preclude admission of these benefits.

Prior to trial, plaintiff's motion for this protective order was granted, but the court gave defendant leave to renew its objection to the protective order if the benefits later became relevant. After the court allowed Zimmer to testify, defendant moved to set aside the protective order because loss of future earnings was then an issue in the case. The motion was overruled.

■■ It is a well-established rule of damages that benefits received by plaintiff from sources wholly independent of and collateral to the tortfeasor will not serve to diminish any damages otherwise recoverable. (*Bireline v. Espenscheid* (1973), 15 Ill. App. 3d 368, 304 N.E.2d 508.) Defendant does not dispute the validity of this rule but argues that evidence of retirement and pension benefits were admissible for the limited purpose of demonstrating Brumley's motivation to retire at the age of 65. We disagree. The United States Supreme Court opinions in *Tipton v. Socony Mobil Oil Co.* (1963), 375 U.S. 34, 11 L. Ed. 2d 4, 84 S. Ct. 1, and *Eichel v. New York Central R.R. Co.* (1963), 375 U.S. 253, 11 L. Ed. 2d 307, 84 S. Ct. 316, we believe, reflect a strong policy against the admissibility of this kind of collateral source evidence in F.E.L.A. and Jones Act cases. (See *Page v. St. Louis Southwestern Ry. Co.* (5th Cir. 1965), 349 F.2d 820.) In *Tipton,* a Jones Act case, the Supreme Court held it was error for the trial court to admit evidence of plaintiff's compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §901 *et seq.* (1958)), although defendant was attempting to show that plaintiff was a longshoreman, rather than a seaman, and therefore not entitled to sue under the Jones Act. In *Eichel,* a F.E.L.A. case, the Supreme Court held that the trial court properly excluded evidence of disability benefits received by plaintiff under the Railroad Retirement Act (45 U.S.C. §228b(a)4 (1958).). Defendant had argued that the disability benefits, though inadmissible to offset or mitigate damages, were admissible to show plaintiff's motive for not returning to work and the extent and duration of the disability. The court concluded:

> "In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. * * * We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. *Tipton v. Socony Mobil Oil Co., Inc.,* 375 U.S. 34. It has long been recognized that evidence

showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. (375 U.S. 253, 255, 11 L. Ed. 2d 307, 309, 84 S. Ct. 316, 317.)

The same policy considerations that warrant the exclusion of disability benefits apply equally to the present controversy. The possibility of prejudice resulting from the admission of social security and retirement benefits is readily apparent. The jury could easily confuse the purpose for which such evidence was admitted. Furthermore, the fact that the Jones Act creates a Federal cause of action suggests that the application of the collateral source rule, normally a question of State law, is in the present context a matter of Federal law. (See *Gypsum Carrier, Inc. v. Handelsman* (9th Cir. 1972), 307 F.2d 525.) Accordingly, the broadly based Federal policy expressed in *Eichel* and *Tipton* precluding the admission of collateral benefits in Jones Act and F.E.L.A. cases is controlling.

Even if the collateral source doctrine were a question of State law as argued by defendant, we believe the result would be the same. The issue of the admissibility of social security, retirement and pension benefits, for the limited purpose of showing Brumley's motivation to retire from work would be one of first impression in this State. While defendant is correct in noting that several courts in other jurisdictions have allowed evidence of payments from a third party in non-Jones-Act cases when relevant to the question of a plaintiff's motivation to continue working and the nature and extent of his injuries (see *Bookbinder v. Rotondo* (1972), 109 R.I. 346, 285 A.2d 387; *Jackson v. Sabuco* (1970), 21 Mich. App. 430, 175 N.W.2d 532; *Jackson v. Beard* (1970), 146 Ind. App. 382, 255 N.E.2d 837), we believe that our supreme court would adhere to the Federal rule set forth in *Tipton* and *Eichel* in Jones Act cases.

Defendant next argues that the trial court improperly instructed the jury as to the duty owed by defendant to Brumley. The alleged erroneous instruction submitted to the jury reads:

"It was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the safety of the plaintiff, and to provide plaintiff with a reasonably safe place in which to do his work."

Defendant contends that this instruction was an incorrect statement of the law because it imposed two separate and distinct duties upon defendant, namely, "the duty to use ordinary care" *and* "the duty to provide plaintiff with a reasonably safe place to work," whereas defendant had merely the single duty to use ordinary care to provide a reasonably safe place to work. (Compare Illinois Pattern Jury Instructions, Civil, No. 160.08 (2d

ed. 1971) (duty of care under Federal Employers' Liability Act, 45 U.S.C. §§51 *et seq.* (1970)).) It is apparently defendant's concern that the instruction imposed an absolute duty on defendant to provide a reasonably safe working place.

■■ We believe defendant did not suffer any prejudice by the above instruction. Defendant's rather technical interpretation of this instruction overlooks the reasonable construction that the phrase "ordinary care" qualifies both the duty to exercise care for Brumley's safety and the duty to provide a reasonably safe place to work. The presence then of "ordinary care" language in the instruction distinguishes this case from those cited by defendant in which an unequivocal absolute duty was imposed. (See *Seaboard Air Line Ry. v. Horton* (1914), 233 U.S. 492, 58 L. Ed. 1062, 34 S. Ct. 635; *Anderson v. Elgin, Joliet & Eastern Ry. Co.* (7th Cir. 1955), 227 F.2d 91.) Furthermore, any error associated with this instruction must be viewed as harmless where defendant does not contest its liability but merely raises issues relating to the questions of damages.

For the reasons stated, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.