Joseph P. GRIESSER, Appellant,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, Appellee.

Superior Court of Pennsylvania.

Argued July 26, 2000.
Filed Oct. 19, 2000.

Marvin I. Barish, Philadelphia, for appellant.

Thomas F. Reilly, Philadelphia, for appellee.

1. 45 U.S.C. §§ 51–60 (1908).

2. The jury awarded $99,750 in past lost wages and benefits, $71,250 in future lost wages and

BEFORE: KELLY, JOYCE, and LALLY–GREEN, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Joseph Griesser, appeals from the judgment entered October 26, 1999, following a jury trial. This case presents an issue of first impression in Pennsylvania regarding the interplay of the collateral source rule and the Federal Employers' Liability Act (FELA).[1] Appellant argues that the trial court erred by introducing evidence which is barred by the collateral source rule. We agree and, therefore, vacate the judgment.

¶ 2 The facts of the case are as follows. On February 7, 1994, Appellant sustained injuries in the course of his employment after falling backward onto the deck of a flatbed truck. On January 19, 1997, Appellant filed a FELA action against his employer, defendant/appellee National Railroad Passenger Corporation (Amtrak). After a five-day trial in April 1998, a jury found Amtrak 50% negligent and Appellant 50% contributorily negligent. N.T., 4/14/98, at 4. The jury found that Appellant suffered a total of $419,500 in damages.[2] On October 26, 1999, the trial court entered judgment for ·Appellant in the amount of $209,750, reflecting Appellant's 50% contributory negligence. This appeal followed.

¶ 3 Appellant raises four issues on appeal:

  I. Whether the trial court, over vigorous objection of counsel, erroneously permitted defendant to repeatedly inject collateral source evidence into the proceedings?

  II. Whether the trial court's negligence instruction, which erroneously engrafted common law concepts of proximate causation onto [FELA], prejudicially impacted the verdict?

benefits, $162,562 in past pain and suffering, and $85,938 in future pain and suffering. N.T., 4/14/98, at 4–5.

III. Whether the trial court's contributory negligence instruction, which abrogated the railroad's burden of proof on this defense, erroneously sanctioned a diminution in plaintiff's damages under circumstances not warranted by federal decisional law?

IV. Whether the trial court, absent any affirmative showing of prejudice to the defendant, erroneously denied plaintiff's request to retain a substitute expert, and whether improvident comments from the bench and opposing counsel further exacerbated the resulting harm?

Appellant's Brief at 2. Because Appellant's first issue has merit, we need not address the remaining issues.

¶ 4 Appellant argues that the trial court committed reversible error by allowing the jury to hear evidence that Appellant could retire with full pension benefits at age 60. According to Appellant, this evidence violates the collateral source rule. Before discussing the applicable law, it is necessary to examine in detail the factual basis of Appellant's claim.

¶ 5 The record reveals the following. Appellant was age 45 at the time of trial. N.T., 4/7/98, at 74. Appellant presented an expert to testify as to future lost earning capacity. N.T., 4/8/98, at 66–93. This expert's calculations were based on an expected retirement age of either 65 or 70. *Id.* at 76–77; 79–80. On cross-examination, the expert was asked whether he was "aware that railroad employees who attain the age of 60 who have 30 years of experience are entitled to full retirement benefits." *Id.* at 82. Appellant's counsel objected, arguing that evidence of such benefits would violate the collateral source rule. *Id.* at 82–85. The court overruled the objection on the ground that the evidence "does not introduce collateral source." *Id.* at 85. After the question was repeated, the expert answered, "No. I don't know the exact wording of it." *Id.*

at 85. The expert did, however, volunteer that "the figures would be the same" if Appellant retired at age 60 with full benefits, because "earnings were provided through some other means." *Id.* at 86. After a sidebar, the trial court sustained an objection to further inquiry into this matter. *Id.* at 86–88.

¶ 6 On the next day, April 9, 1998, Amtrak began presenting its case in chief. Amtrak presented an expert forensic economist to testify as to Appellant's lost earnings. Over Appellant's counsel's objection, this expert testified in relevant part as follows:

I measured—assuming [Appellant] would retire at 60, 62, and 66. Sixty is the age given [Appellant's] seniority he could have retired from the railroad and would have been eligible for full benefits.... [A]t age 62 if he were to retire then it turns out that given the pension benefits he would have been eligible for, he would be basically making as much after taxes from pension as he would from earnings.

N.T., 4/9/98, at 127.

¶ 7 Our standard of review is well settled. When reviewing a trial court's denial of a request for a new trial, "we must determine whether the trial court clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case." *Brinich v. Jencka,* 757 A.2d 388, 2000 PA Super 209 at ¶ 15 (citation omitted). "When improperly admitted testimony may have affected a verdict, the only correct remedy is the grant of a new trial." *Collins v. Cooper,* 746 A.2d 615, 620 (Pa.Super.2000) (citation omitted).

¶ 8 We now turn to the interplay between FELA and the collateral source rule. FELA is a federal statute which provides the framework for handling claims of injury by federal railroad workers. *Hileman v. Pittsburgh & Lake Erie R.R.,* 546 Pa. 433, 685 A.2d 994, 998 n. 1 (1996) (citation omitted). Unlike modern

systems of workers' compensation, FELA requires a claimant to prevail in a negligence action against his employer in order to recover. *Id.* at 998 n. 1.

¶ 9 "[S]tate courts have jurisdiction to try FELA claims." *Id.* at 997, *citing* 45 U.S.C. § 56. State courts handling FELA claims are required to apply substantive federal law. *Id.* Under FELA, the collateral source rule is a "substantive precept of federal common law," and not a rule of evidence. *Id.* Accordingly, we review the trial court's decision for an error of law and not for an abuse of discretion. *Id.* ("balancing analysis," where court weighs probative value and prejudicial effect of collateral source evidence, is inappropriate under FELA).

¶ 10 Generally, "[t]he collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." *Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96, 100 (1995). This rule "was intended to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, *e.g.* insurance." *Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 476 A.2d 350, 352 (1984); *see also,id.* at 353 (the rule is "intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy"); *Denardo v. Carneval*, 297 Pa.Super. 484, 444 A.2d 135, 140 (1982) ("Pennsylvania law is clear; the victim of a tort is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources"), *citing, inter alia, Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A.2d 259 (1963).

¶ 11 The seminal case regarding the collateral source rule in the context of FELA is *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) (per curiam). In that case, the plaintiff alleged that he sustained perma-

nent, disabling injuries as a result of his employer's negligence. The employer attempted to introduce evidence that the plaintiff was receiving disability pension payments under the Railroad Retirement Act of 1937. *Id.* at 253, 84 S.Ct. 316. The employer explained that the evidence was probative of the plaintiff's motive for not returning to work. *Id.* at 254, 84 S.Ct. 316. The trial court excluded this evidence. *Id.* The Court of Appeals for the Second Circuit reversed, holding that the evidence should have been admitted. *Id.* The Supreme Court reversed and held that the evidence was properly excluded. *Id.*

¶ 12 The Supreme Court reasoned that the disability pension benefits could not be used to offset or mitigate the employer's damages. *Id.* The Supreme Court rejected the argument that the evidence should have been admitted to show the plaintiff's motive for not returning to work:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the [Railroad Retirement Act] were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act. We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. *Tipton v. Socony Mobil Oil Co., Inc.*, 375 U.S. 34 [84 S.Ct. 1] [1963]. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the

District Court properly excluded the evidence of disability payments.

*Id.* at 255, 84 S.Ct. 316 (footnotes omitted).[3]

¶ 13 *Eichel* involves "a straightforward application of the collateral source rule: a defendant may not introduce evidence that a plaintiff has received compensation on account of his injury from a source other than the defendant." *Hileman,* 685 A.2d at 997. This was so even though the plaintiff in *Eichel* was currently receiving disability benefits which were directly attributable to the injury at issue.

¶ 14 Federal and state courts have followed this straightforward application of *Eichel. See, e.g., Green v. Denver & Rio Grande Western R. Co.,* 59 F.3d 1029, 1032–1033 (10 th Cir.1995), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995); *Wilcox v. Clinchfield R. Co.,* 747 F.2d 1059, 1060 (6 th Cir.1984); *Morse v. Southern Pac. Transportation Co.,* 63 Cal. App.3d 128, 133–134, 133 Cal.Rptr. 577, 580–581 (1976). In *Green,* 59 F.3d at 1031, the trial court determined that Railroad Retirement Act disability benefits were admissible to offset any damage award that the plaintiff might receive. On appeal, the Tenth Circuit Court of Appeals held that introduction of such evidence was reversible error, even though the jury found no liability, because of the concern that "juries will be more likely to find no liability if they know that the plaintiff has received some compensation." *Id.* at 1033–1034.

¶ 15 The instant case presents a more attenuated link between the injury and the benefits at issue. The benefits at issue are future retirement pension benefits and not current disability benefits. Thus, the benefits are not related to the injury.

¶ 16 Appellant argues that because he is permanently disabled, he is entitled to lost wages until the usual age of retirement (either 65 or 70). Implicit in this argument is that, but for the injury, Appellant would have worked until age 65 or 70. Amtrak presented evidence that if Appellant had continued working at Amtrak until age 60, he would have been able to retire with benefits equivalent to a full salary. Thus, Appellant had an incentive to retire at age 60 even if he had not been injured. Consequently, Amtrak argues, the assumption that he would have worked until age 65 or 70 is faulty.

¶ 17 No Pennsylvania state case has decided whether evidence of benefits not related to the injury is barred by the collateral source rule. Indeed, *Hileman* is the only Pennsylvania state case discussing the interplay between FELA and the collateral source rule. In that case, our Supreme Court addressed a counterpart to the collateral source rule: namely whether the court commits reversible error when it permits plaintiff to argue that he has no recourse to workers' compensation because he is a federal railroad employee. *Hileman,* 685 A.2d at 997. Our Supreme Court held, as a matter of federal and

---

**3.** *Tipton,* cited by *Eichel,* involved a claim under the Jones Act, 46 U.S.C. § 688. The Jones Act is analogous to FELA, but is applicable to seamen. *Hileman,* 685 A.2d at 998 n. 1. The primary issue in *Tipton* was whether the plaintiff was a seaman for purposes of the Jones Act. The defendant attempted to show that the plaintiff was not a seaman by introducing evidence that the plaintiff had accepted compensation benefits through a different federal statute which is explicitly inapplicable to "a member of a crew of any vessel." *Tipton,* 375 U.S. at 35, 84 S.Ct. 1. The defense not only introduced the evidence, but repeatedly commented on that evidence. *Id.* at 35, 84 S.Ct. 1. The jury found that the plain-

tiff was not a seaman and, thus, did not address the issue of damages. ·*Id.*

The Supreme Court held that, "on the record in this case," the trial court committed reversible error. *Id.* Specifically, the trial court did not issue a limiting instruction informing the jury that the evidence was relevant only to the question of whether the plaintiff was a seaman. *Id.* at 35–36, 84 S.Ct. 1. Moreover, during deliberations, the jury asked the judge whether the plaintiff would have recourse to other benefits if he were not found to be a seaman. *Id.* at 36, 84 S.Ct. 1. Thus, it appeared from the record that the jury placed undue emphasis on the availability of collateral benefits. *Id.* at 37, 84 S.Ct. 1.

state law, that the trial court did commit reversible error. *Id.* at 997–998 (reasoning in part that the evidence is irrelevant to the issues in the case and "can serve only to create sympathy for the plaintiff and potential prejudice against the defendant").

¶ 18 Courts from other jurisdictions, however, have held that such evidence is inadmissible. One case on point is *Lee v. Consolidated Rail Corp.*, 1995 U.S. Dist. Lexis 18199, 1995 WL 734108 (E.D.Pa. December 5, 1995). In that case, the plaintiff was injured in the course of his employment with Conrail. Conrail attempted to introduce evidence that under the Railroad Retirement Board's early retirement policy, the plaintiff would have been entitled to retire at age 62 with full benefits. *Id.* at \*10, 1995 WL 734108 at \*4. Conrail argued that the evidence was relevant to show that the plaintiff had an incentive to retire early, even if he had not been injured. Conrail further argued that: (1) evidence pertaining to a worker's incentive to retire early is always relevant to the issue of lost wages; and (2) the collateral source rule only bars evidence of benefits paid as a result of the injury, not evidence of benefits that would have been paid notwithstanding his injury. *Id.* at \*\*10–12, 1995 WL 734108 at \*4.[4]

¶ 19 The *Lee* court rejected these arguments, reasoning that under *Eichel* and its progeny, evidence of collateral source benefits "must be categorically excluded." *Id.* at \*11, 1995 WL 734108 at \*4 (citations omitted). Moreover, "any evidence that demonstrates alternative sources of compensation is inadmissible when a jury may use it to offset the plaintiff's damages." *Id.* at \*\*12–13, 1995 WL 734108 at \*4, *citing Tipton, supra; Reed v. Philadelphia, Bethlehem & New England R. Co.*,

939 F.2d 128 (3ʳᵈ Cir.1991); *Page v. St. Louis Southwestern Ry. Co.*, 349 F.2d 820 (5ᵗʰ Cir.1965); and *Brumley v. Federal Barge Lines, Inc.*, 78 Ill.App.3d 799, 33 Ill.Dec. 609, 396 N.E.2d 1333 (1979). We find *Page* and *Brumley* particularly instructive.

¶ 20 In *Page*, a FELA case, the defendant presented evidence that the injured plaintiff was currently receiving retirement benefits under the Railroad Retirement Act. *Page*, 349 F.2d at 821. While the plaintiff claimed that he was not working as a result of the injury, the defendant argued he was simply malingering and would have retired even though no injury had occurred. *Id.* at 820–821. Citing *Eichel* and *Tipton*, the Fifth Circuit Court of Appeals held that introducing such evidence was reversible error:

> [W]e think there is no substantial basis for distinguishing this case from *Eichel* and *Tipton* .... Both *Tipton* and *Eichel* reflect a strong policy against the use of such collateral source evidence in FELA and analogous Jones Act-maritime law seamen's cases. With the whole result in our case being the enigma wrapped in the mystery of a general verdict concealing forevermore the use or uses to which the jury might have put this evidence, we cannot say that the error, preserved by emphatic and timely objection, was harmless.

*Id.* at 822 (footnote omitted).[5]

¶ 21 *Brumley* arose under the Jones Act. The plaintiff in that case was 63 years old on the date of trial. *Brumley*, 33 Ill.Dec. 609, 396 N.E.2d at 1335. The trial court had excluded all evidence regarding "pension, retirement, and social security benefits plaintiff was to receive upon retirement." *Id.* at 1339. The defendant

---

**4.** Amtrak raises the same arguments in the instant case. Amtrak's Brief at 12–13.

**5.** Unlike the *Page* jury, the jury in the instant case used a special verdict form. This distinction does not compel a different result, because it is still difficult if not impossible to

tell how the jury used the improperly-admitted evidence. *See, Gallo v. Yamaha Motor Corp.*, 363 Pa.Super. 308, 526 A.2d 359, 366 (1987) (following this principle with respect to erroneous jury instructions), *appeal denied*, 517 Pa. 623, 538 A.2d 876 (1988).

had argued that such evidence was relevant to the plaintiff's future earning capacity, and probative of the plaintiff's motivation to continue working beyond age 65. *Id.* The Appellate Court of Illinois, citing *Eichel* and *Tipton*, held that the trial court committed no error:

> The same policy considerations that warrant the exclusion of disability benefits apply equally to the same controversy. The possibility of prejudice resulting from the admission of social security and retirement benefits is readily apparent. The jury could easily confuse the purpose for which such evidence was admitted.... Accordingly, the broadly based Federal policy expressed in *Eichel* and *Tipton* precluding the admission of collateral benefits in Jones Act and F.E.L.A. cases is controlling.

*Id.* at 1340. [6]

¶ 22 We find the reasoning of *Lee* and the cases cited therein to be persuasive.[7] *See also, Mahon v. Reading Co.,* 367 F.2d 25, 30 (3 rd Cir.1966) (noting in *dicta* that evidence of unemployment benefits was inadmissible for any purpose in a FELA case and observing that "any benefits paid by the Railroad Retirement Board ... cannot be taken advantage of by defendant to mitigate the damage or otherwise"); *Kimmen v. Conrail,* 1999 U.S. Dist. Lexis 2973, 1999 WL 148360 at *3 (E.D.Pa. March 17, 1999) at *9 (evidence of retirement pension benefits were properly excluded in a FELA case because the probative value thereof would be substantially

outweighed by the danger of unfair prejudice); *Finley v. AMTRAK,* 1 F.Supp.2d 440, 443–444 (E.D.Pa.1998) (granting mistrial in a FELA case where defense counsel, in opening statement, repeatedly commented to jury that plaintiff had retired and was currently receiving a disability pension).

¶ 23 We understand that future retirement benefits are not triggered by the injury; rather, they would have been awarded even if Appellant had not been injured. Moreover, future retirement benefits do not improperly suggest that the plaintiff is currently being compensated for his injury from another source. In these respects, the evidence at issue is not "classic" collateral source evidence.

■ ¶ 24 On the other hand, there remains a significant danger that a jury will misuse and misinterpret evidence of early retirement benefits. For example, the jury could conclude that Amtrak was liable for lost wages to age 65 or 70, but then decline to award such damages because of the fortuitous existence of equivalent retirement benefits. Or, the jury could conclude that Appellant was entitled to benefits only to age 60 and was attempting to seek a double recovery of benefits after age 60. In short, this evidence distracts the jury from the issues in the case and has a strong likelihood of prejudicing the plaintiff. Thus, we conclude that evidence of Appellant's future retirement benefits

---

**6.** We have already discussed *Tipton* in footnote 3, supra. In *Reed,* the plaintiff brought against his employer under Federal Safety Appliance Act, not FELA. *Reed,* 939 F.2d at 129. Plaintiff's counsel, in closing argument, contended that the defendant tried "to deprive him of every right that he has under the law." *Id.* at 133. In response, defense counsel contended that the plaintiff had not been "cast aside"; rather, he is currently collecting disability payments. *Id.* Moreover, defense counsel suggested that the plaintiff would have retired early if the injury had not occurred: "being on disability, he felt like a free man, that he didn't have to punch a time clock." *Id.* The third Circuit Court of Appeals held that it was reversible error to all

the defense to make such comments. First, evidence of disability payments has been excluded by a motion in limine, and thus was not part of the record at trial. *Id.* Next, citing *Eichel* and *Tipton,* the court held that the defense's argument had a significant likelihood of prejudicing the jury. *Id.* at 133–134.

**7.** We recognize that decisions from federal district courts, federal circuit courts, and out-of-state courts are not binding on this Court, even in cases involving federal substantive law. *Willard v. Interpool, Ltd.,* 2000 PA Super 235 at ¶ 6, 758 A.2d 684.

was inadmissible to show that Appellant had an economic incentive to retire before age 65, because of the danger that the jury would use this evidence for the improper purpose of mitigating Appellant's damages or reducing Amtrak's liability. In this way, we adhere to the underlying purpose of the collateral source rule in light of the strong policy against the admission of collateral benefits in FELA cases.

¶ 25 Amtrak raises several alternative arguments for affirming the trial court's decision. First, Amtrak argues that evidence of future retirement benefits was admissible to impeach the credibility of Appellant's lost-wages expert. Specifically, the evidence was admissible to show that Appellant's expert did not know that railroad workers commonly retire at age 60 if they have 30 years of service. Amtrak's Brief at 10, 12–13.

¶ 26 Under the facts of this case, this argument is misplaced. Amtrak could have pursued this line of cross-examination without alluding to the fact of early retirement benefits. *Eichel*, 375 U.S. at 255, 84 S.Ct. 316. Moreover, Amtrak introduced evidence of retirement benefits not only through cross-examination, but also through Amtrak's own case-in-chief. As noted above, Amtrak's expert explicitly told the jury that Appellant could have retired at age 60 with full benefits. N.T., 4/9/98, at 127.

¶ 27 Second, Amtrak argues that Appellant "opened the door" by claiming that he would have retired at age 65 or 70; therefore, Amtrak was permitted to present rebuttal evidence that Appellant would have worked to age 60. Amtrak's Brief at 14. We agree that Amtrak should be able to present evidence tending to show that Appellant would not work beyond age 60; however, for the reasons set forth above, this evidence should not include the availability of early retirement benefits. *Eichel*, 375 U.S. at 255, 84 S.Ct. 316.

¶ 28 Finally, Amtrak argues that the trial court had the discretion to balance the probative value and prejudicial impact of the evidence; therefore, we should review the court's decision for an abuse of discretion. Amtrak's Brief at 15–17. One federal circuit court has come to this conclusion. *McGrath v. CONRAIL*, 136 F.3d 838, 841 (1st Cir.1998). Our Supreme Court, however, has rejected this position. *Hileman*, 685 A.2d at 997. Accordingly, we are not at liberty to come to a different result.

 ¶ 29 In conclusion, we hold that the trial court committed an error of law when it permitted Amtrak to present evidence of collateral early retirement benefits. Given the likelihood that the jury may have used this evidence to mitigate Appellant's damages or reduce Amtrak's liability, we are constrained to remand for a new trial on liability and damages.

¶ 30 Judgment vacated. Remanded for a new trial. Jurisdiction relinquished.